UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
(973) 736-4600
(973) 325-7467 Facsimile
Jeffrey M. Rosenthal, Esq.
jrosenthal@mblawfirm.com
Vincent J. Roldan, Esq.
vroldan@mblawfirm.com
Katie F. Warren
KWarren@mblawfirm.com
*Proposed Counsel for Francesca's Acquisition, LLC, et al.*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>FRANCESCA'S ACQUISITION, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26 – [] ()<br><br>(Joint Administration Requested)<br>(Shortened Notice Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION, LIENS AND SUPERPRIORITY CLAIMS TO THE SECURED LENDERS FOR THE USE THEREOF; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO THE USE OF CASH COLLATERAL; AND (IV) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") state as follows in support of this motion (the "Motion"):

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Francesca's Acquisition, LLC (3616); Francesca's Operations, Inc. (6872); Francesca's Administrative Management, Inc. (5788); and Francesca's IP Company, Inc. (9588). The Debtors' service address is 8760 Clay Road, Suite 100, Houston, TX 77080.

1

**Relief Requested**

1. By this Motion, the Debtors seek entry of interim order, substantially in the form attached hereto as **Exhibit A** (respectively, the "Interim Order"): (i) authorizing the Debtors to use cash collateral (the "Cash Collateral") as working capital in the operation of the Debtors' business and for the purposes specified, and for the period specified, in the budget (the "Budget"), attached hereto as **Exhibit B** and incorporated herein; (ii) granting adequate protection for, and to the extent of, any diminution in value of the cash collateral; (iii) scheduling a hearing to consider approval of the Motion on a final basis (the "Final Hearing"); and (iv) granting related relief.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-3 of the Bankruptcy Local Rules for the District of New Jersey (the "Bankruptcy Local Rules")

**Background**

5. February 5, 2026 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have requested that the chapter 11 cases (the "Chapter 11 Cases") be jointly administered.

6. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4901-4904-8204, v. 1

7. No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

8. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Curt Kroll, Chief Financial Officer Of Francesca's Acquisition, LLC, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed contemporaneously with the Motion.[2]

## Summary of Prepetition Financing Agreements

9. As of the Petition Date, the Debtors' outstanding prepetition funded-debt obligations relate to a financing arrangement consisting of a revolving, asset-based credit facility and a term loan facility under the Prepetition Loan Documents (as defined below; capitalized terms in paragraphs 9 through 14 not otherwise defined have the meanings ascribed to them in the Prepetition Loan Documents).

10. On February 21, 2024, the Debtors, as borrowers, entered into that certain Revolving Credit Agreement, as amended by that certain First Amendment to Revolving Credit Agreement dated May 2, 2024, and that certain Waiver, Consent and Second Amendment to Credit Agreement dated September 6, 2024 (as may have been further amended, restated, modified, or supplemented from time to time, the "Prepetition Credit Agreement") with Tiger Finance, LLC, as Administrative Agent and Collateral Agent ("Tiger"), Second Avenue Capital Partners LLC, as Funding Agent ("Second Avenue"), and the Lenders party thereto (collectively, with Tiger and Second Avenue, the "Prepetition Secured Lenders"). Pursuant to the Prepetition Credit Agreement, the associated Revolving Note (the "Prepetition Revolving Note") and the Term Note (the

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

3

"Prepetition Term Note", together with the Prepetition Revolving Note, the "Prepetition Notes", and, collectively with the Prepetition Credit Agreement and all schedules and exhibits attached thereto and all other agreements, documents, instruments and/or amendments executed and delivered in connection therewith, the "Prepetition Loan Documents"), Prepetition Secured Lenders extended to the Debtors a revolving, asset-based facility in the aggregate amount up to Forty Million and 00/100 Dollars ($40,000,000) (the "Prepetition Revolving Loans") and a term facility in the amount of Four Million Five Hundred Thousand and 00/100 Dollars ($4,500,000) (the "Prepetition Term Loan", together with the Prepetition Revolving Loans, the "Prepetition Loans").

11.     Under the Prepetition Credit Agreement, interest on the Prepetition Revolving Loans is set at a rate per annum equal to Adjusted Term SOFR, plus six and one-quarter percent (6.25%), due and payable in arrears on each Interest Payment Date.  Further, the Debtors are obligated to pay additional interest at the applicable PIK Interest Rate, payable in kind by adding the amount of such accrued interest to the outstanding balance of the Prepetition Loans on the first Interest Payment Date of each calendar quarter, commencing with the first such date following the Closing Date.  In the event of default, and at the discretion of the Prepetition Secured Lenders, all outstanding Obligations of the Debtors may then bear interest at the Default Rate equal to the then-applicable rate, plus five percent (5.00%).  Currently, the Prepetition Revolving Loans are accruing interest at the Default Rate.

12.     Further, pursuant to the Prepetition Credit Agreement, the outstanding balance of the Prepetition Term Loan did not accrue interest, provided that at any time an Event of Default occurred, and at all times following the Termination Date, the outstanding balance of the Prepetition Term Loan would bear interest at a per annum rate equal to the Base Rate plus five

percent (5.00%). Currently, the Prepetition Term Loan is accruing interest at the Base Rate plus five percent (5.00%).

13. The Obligations under the Prepetition Loan Documents are secured by a first priority lien on substantially all of the Debtors' assets including, without limitation, all: (i) Accounts; (ii) Goods, including Equipment, Inventory and Fixtures; (iii) Documents, Instruments and Chattel Paper; (iv) Letters of Credit, Letter-of-Credit Rights and Supporting Obligations; (v) Securities Collateral; (vi) Investment Property; (vii) Intellectual Property Collateral; (viii) Commercial Tort Claims; (ix) General Intangibles, including, without limitation, all Payment Intangibles; (x) Deposit Accounts, money, cash and cash equivalents; (xi) owned real property, mortgages, leases and proceeds of leases of real property; (xii) books and records relating to the Collateral; and (xiii) all other personal property not described in (i) through (xii) above, and all accessions to, and substitutions or replacements of, the foregoing (the "Prepetition Collateral").

14. As of the Petition Date, the Debtors are in default under the Prepetition Credit Agreement and the outstanding balance owed to the Prepetition Secured Lenders on account of the Prepetition Loan Documents is approximately $30.1 million.

15. As of the Petition Date, the Debtors also have unsecured obligations of approximately $45 million.

### Statement of Significant Provisions

16. Pursuant to Bankruptcy Rule 4001(b), the Debtors state that as adequate protection for diminution in value of Cash Collateral, the Debtors will do, or provide, the following: (i) maintain the value of their business as a going-concern; (ii) comply at all times with the Budget, subject to reasonable variances; (iii) provide replacement liens to the Prepetition Secured Lenders to the extent of any diminution in value of the Prepetition Collateral (Interim Order para. 7(a)), (iv) provide an adequate protection superpriority claim (Interim Order para. 7(b)), provide default

4901-4904-8204, v. 1

interest (Interim Order para. 7(c), (v) provide for payment of a weekly cash management fee of $12,500 (Interim Order para. 7(d)), (vi) provide for payment of Prepetition Agent's fees and expenses (Interim Order para. 7(g)), and (vii) provide for the funding of a Lender Indemnity Reserve of $250,000 (Interim Order para. 7(i)).

17. Pursuant to Local Rule 4001-3, Debtors summarize further relevant provisions as follows:

| **Local Rule 4001-3(a)(2)** | **Provision in Order** |
|---|---|
| (A) the amount of cash collateral sought to be used; | See Budget (about $3 million in disbursements through five weeks) |
| (B) the adequate protection to be provided for the use of cash collateral; | See para 16 above (Interim Order para. 7) |
| **Local Rule 4001-3(c)** | |
| (1) the effect of the relief sought on existing liens; | n/a |
| (2) elevation of pre-petition debt to administrative expense or super-priority status or the grant of a lien on post-petition assets to secure pre-petition debt; | n/a |
| (3) termination or default provision, including any cross-default provision or provision that the use of cash collateral or credit will cease on: (A) the filing of a challenge to the lender's pre-petition lien or claim; | Filing by Debtor or another person who obtains standing of a challenge (Interim Order para. 5(d)). |
| (B) the entry of an order granting relief from the automatic stay; | Modification of the automatic stay in a manner that has a material impact on Prepetition Agent or Prepetition Secured Parties. (Interim Order para. 5(v)) |
| (C) the filing of a motion for the appointment of a trustee or examiner; | Appointment of an examiner or trustee (Interim Order para. 5(c)) |
| (D) the entry of an order granting a change of venue; | n/a |
| (E) a management change; or | If Curt Kroll is not CFO ((Interim Order para. 5(i)) or Drew Baird is not the independent director and sole member of restructuring committee (Interim Order 5(j)) |
| (F) the departure of any identified employee; | n/a |
| (4) establishment of a deadline or a requirement for: (A) the sale of property of the estate or of a non-debtor affiliate; or (B) the filing of a plan; | Deadline to sell intellectual property by April 10, 2026 (Interim Order para. 6(j)) (no deadline to file a plan) |

4901-4904-8204, v. 1

| | |
|---|---|
| (5) limitation of the court's authority, or enhancement or restriction of the rights, powers, or duties of a trustee, examiner, debtor, or committee appointed under the Bankruptcy Code; | n/a |
| (6) limitation or waiver of rights under § 506(c) of the Code; | 506(c) waiver subject to final order (Interim Order para. 16) |
| (7) agreement binding the debtor or other parties in interest with respect to the validity, perfection, or amount of the lender's pre-petition claim, or the waiver of claims against the lender; | Debtor's releases and consent to validity of liens (Interim Order para. F(v), (vi)) |
| (8) grant of an interest on causes of action arising under §§ 544, 547, 548, or 549 of the Code; | Adequate protection lien on proceeds of avoidance action, subject to final order (Interim Order para. 7(a)) |
| (9) carve-outs from liens or super-priorities; | Carve out (Interim Order para. 4) |
| (10) change of control; | n/a |
| (11) cross-collateralization; | n/a |
| (12) funding of a non-debtor affiliate with cash collateral or credit proceeds and the approximate amount of such funding; | n/a |
| (13) in related debtor cases, a term that affects joint liability of debtors or the allocation of liability among estates; and | n/a |
| (14) for cases under Subchapter V of Chapter 11 of the Bankruptcy Code, payment of the Subchapter V trustee's fees. | n/a |

**Basis For Relief Requested**

**I.      Cash Collateral.**

18.     Section 363 of the Bankruptcy Code and Rule 4001(b) of the Bankruptcy Rules authorize a court to enter an order authorizing a debtor to use cash collateral. To do so, however, the Court must find that the party whose cash collateral is to be used has received "adequate protection" of its interest in cash collateral. As set forth below, and as will be demonstrated at the hearing of this Motion, the interests of the Prepetition Secured Lenders in the Cash Collateral will be adequately protected.

19. The use of Cash Collateral is necessary for the Debtors to maintain sufficient liquidity so that it may continue to operate during the pendency of these Chapter 11 Cases. As supported by the *Declaration of Curt Kroll, Chief Restructuring Officer of Francesca's Acquisition, LLC, in Support of Debtors' Request for Authorization of the Use of Cash Collateral and Provision of Adequate Protection* filed contemporaneously with this Motion, without immediate access to Cash Collateral, the Debtors will not be able to pay the ongoing costs of running their business and administering their estates, the result of which would be the cessation of operations, irreparable damage to the value of the Debtors, and the corresponding diminution in the value of the Prepetition Collateral.

II.  **Statutory Basis for Adequate Protection**.

20. The Debtors' use of Cash Collateral, including the Debtors' proposed provision of adequate protection set forth below, is authorized pursuant to section 363(c) of the Bankruptcy Code. The Court, in authorizing the use of Cash Collateral, may do so if it finds that the interest of the entity holding a lien on cash collateral is, or will be, adequately protected. In this case, the interests of the Prepetition Secured Lenders in the Prepetition Collateral will be adequately protected as summarized in paragraph 16 above. Section 363(c)(2) of the Bankruptcy Code provides that a debtor "may not use, sell or lease cash collateral…unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." *See* 11 U.S.C. § 363(c). The Debtor believes that for the reasons set forth herein, the Court may authorize use of Cash Collateral.

21. Section 363(e) of the Bankruptcy Code provides that, on request of an entity that has an interest in cash collateral to be used, a court may condition such use as is necessary to provide adequate protection of such interest. What constitutes adequate protection must be

decided on a case-by-case basis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also*, S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978). The focus of the requirement is to protect a secured creditor from diminution in the value of its collateral during the use period. *See In re Gasel Transp. Lines, Inc.*, 326 B.R. 683, 692 (6th Cir. B.A.P. 2005); *Matter of Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Association and Federal Land Bank (In re Delbridge)*, 104 B.R. 824 (E.D. Mich. 1989).

22. The test for determining what constitutes adequate protection is "whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral." *In re Carbone Companies, Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) citing *Gasel Transp. Lines*, 326 B.R. 683. In other words, if a debtor's proposed protections adequately preserve the creditor's interest in the collateral as it existed on the petition date, then that creditor is adequately protected.

23. Adequate protection is typically established by demonstrating that cash is being used to maintain and enhance the value of the underlying income producing property in which the creditor also usually holds a security interest. Other factors are also considered, such as whether or not there is equity in the property, whether the property is declining in value, and whether or not postpetition payments due the creditor are current. *See In re The Atrium Development Company*, 159 B.R. 464, 471 (Bankr. E.D. Va. 1993).

24. Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection. *See In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtors could use cash collateral, and finding that the bank was adequately protected where the total value of the Debtor's personal property exceeded the bank's

4901-4904-8204, v. 1

indebtedness); *see also In re Coventry Commons Associates*, 149 B.R. 109 (Bankr. E.D. Mich. 1992); *In re The Resolution Trust Corporation v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994).

### III.     Proposed Adequate Protection.

25. In satisfaction of these legal standards, the Debtors propose the items in the Interim Order para 7 (i) replacement liens (Interim Order para. 7(a)), (ii) an adequate protection superpriority claim (Interim Order para. 7(b)), (iii) default interest (Interim Order para. 7(c), (iv) payment of a weekly cash management fee of $12,500 (Interim Order para. 7(d)), (v) payment of Prepetition Agent's fees and expenses (Interim Order para. 7(g)), and (vi) provide for the funding of a Lender Indemnity Reserve of $250,000 (Interim Order para. 7(i)).

26. The provision of the Adequate Protection Package provides the Prepetition Secured Lenders with more than sufficient adequate protection for the Debtors' use of Cash Collateral. First, the granting of the Replacement Liens in the Postpetition Collateral will operate to keep the Prepetition Secured Lenders whole in their collateral position.  To the extent any Prepetition Collateral, such as accounts receivable, is consumed through the use of Cash Collateral, the Prepetition Secured Lenders will receive a lien on any corresponding collateral that is generated postpetition.  Second, the Debtors will be operating by using its postpetition revenue to operate, and the Budget makes clear that between the Consent Fee being made to the Prepetition Secured Lenders), the Prepetition Secured Lenders' collateral position during the Budget time frame will, at least, remain status quo, or actually could improve.  Finally, the Interim Order contains standard inspection provisions (Interim Order para. 21) which will ensure that the Prepetition Secured Lenders will have regular access to monitor the progress of the Chapter 11 Cases, the Budget and other metrics to ensure the maintenance of their collateral position.  Most importantly, the use of

Cash Collateral will allow the Debtors the ability to maintain the going concern value of the Debtors' operations, the most critical factor in preserving the value of the Prepetition Collateral.

27. Accordingly, the Debtor submits that the Adequate Protection Package provides the Lender with sufficient adequate protection of its interests under section 363 of the Bankruptcy Code and should be approved by the Court.

### IV. Interim Approval of the Use of Cash Collateral Should Be Granted.

28. The Debtors submit that the relief requested by this Motion is necessary, essential, and appropriate and is in the best interests of, and will benefit, the Debtors, their estate, and their creditors. Specifically, granting the limited relief set forth in the Interim Order pending the Final Hearing on this Motion will provide the Debtors with the necessary liquidity to: (a) minimize disruption to the Debtors' business and on-going operations; (b) preserve and maximize the value of the Debtors' estates for the benefit of all creditors; and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their business, their employees and their assets. Thus, the use of Cash Collateral is necessary to avoid immediate and irreparable damage to the Debtors' estates, and the Debtors submit that interim relief pursuant to Bankruptcy Rule 4001 is appropriate.

29. Bankruptcy Rule 4001(b) provides that if, as here, a debtor seeks to use cash collateral during the 14-day period following the filing of a motion requesting such authorization, the court may authorize only that amount as is "necessary to avoid immediate and irreparable harm" to the estate pending a final hearing. Fed. R. Bankr. P. 4001(b)(2).

30. Without immediate access to the use of Cash Collateral, the Debtors expect to suffer an acute cash shortage immediately, which shortage would threaten their ability to maintain operations in the short term — even through the date of the Final Hearing. Accordingly, the Debtors request that the Court enter the proposed Interim Order authorizing the Debtors to utilize Cash Collateral on an interim basis as provided in the Budget.

**Emergency Consideration**

31. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case to the extent that "relief is needed to avoid immediate and irreparable harm," and Bankruptcy Local Rule 9013-1(i). An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

**Waiver Of Bankruptcy Rules 6004(a) and 6004(h)**

32. The Debtors request that the Court enter an order providing that notice of the relief requested satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

33. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity or priority of any claim or lien against the Debtor; (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or the proposed Order; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

4901-4904-8204, v. 1

## Notice

34. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the U.S. Trustee for the District of New Jersey, Attn: Fran B. Steele, Esq. (Fran.B.Steele@usdoj.gov); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel for Prepetition Agent; (d) the United States Attorney's Office for the District of New Jersey; (e) the Internal Revenue Service; (f) all parties who have filed UCC-1s that are active; and (g) any party that is entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that in light of the nature of the relief requested, no other or further notice need be given.

4901-4904-8204, v. 1

The Debtors request entry of an interim order and a final order, substantially in the form attached hereto, granting the relief requested herein and granting such other relief as is just and proper.

Dated: Roseland, New Jersey
February 5, 2026

MANDELBAUM BARRETT PC

By: */s/ Vincent J. Roldan*
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Jeffrey M. Rosenthal, Esq.
(N.J. Bar No. 008231982)
jrosenthal@mblawfirm.com
Vincent J. Roldan, Esq.
(N.J. Bar No. 045371998)
vroldan@mblawfirm.com
Katie F. Warren
(N.J. Bar No. 540842025)
KWarren@mblawfirm.com
*Counsel for Francesca's Acquisition, LLC, et al.*

4901-4904-8204, v. 1