UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
(973) 736-4600
(973) 325-7467 Facsimile
Jeffrey M. Rosenthal, Esq.
jrosenthal@mblawfirm.com
Vincent J. Roldan, Esq.
vroldan@mblawfirm.com
Katie F. Warren
kwarren@mblawfirm.com
*Proposed Counsel for Francesca's Acquisition, LLC, et al.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| FRANCESCA'S ACQUISITION, LLC, *et al.*,[1] | Case No. 26 – [] () |
| Debtors. | (Joint Administration Requested) (Shortened Notice Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) APPROVING AND AUTHORIZING THE DEBTORS TO
ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING
AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III)
APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
<u>GRANTING RELATED RELIEF</u>**

The above-captioned debtors and debtors in possession (collectively, the "<u>Company</u>" or

the "<u>Debtors</u>") state as follows in support of this motion (the "<u>Motion</u>"):

---

[1]    The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Francesca's Acquisition, LLC (3616); Francesca's Operations, Inc. (6872); Francesca's Administrative Management, Inc. (5788); and Francesca's IP Company, Inc. (9588).  The Debtors' service address is 8760 Clay Road, Suite 100, Houston, TX 77080.

37403441.4
4933-8487-4380, v. 2

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto (respectively, the "Interim Order" and "Final Order"):

    a.  Approving, and authorizing the Debtors to assume and perform under, the Consulting Agreement, the form of which is attached to the Interim Order as **Exhibit 1** (together with any amendments and supplements thereto, the "Consulting Agreement"), by and among Tiger Capital Group, LLC ("Tiger") and SB360 Capital Partners, LLC ("SB360") and GA Retail Solutions, LLC ("GA Group") (collectively, the "Consultant");[2]

    b.  Authorizing and approving the continuation and/or initiation of certain store closings and related matters (the "Store Closing Sales") in accordance with the terms of the Consulting Agreement and the store closing sale procedures attached to the Interim Order as **Exhibit 2** (the "Store Closing Procedures"), with such sales to be free and clear of all liens, claims, and encumbrances;

    c.  Approving the sale and/or abandonment of certain Store Closing Assets;

    d.  Approving modifications to certain customer programs, including the acceptance of gift cards;

    e.  Approving incentive programs for the Debtors' store-level, distribution center, and corporate employees, as necessary, to manage orderly and efficient Store Closing Sales, as is included in the Debtors' budget (the "Sale Incentive Program");

    f.  Authorizing the sale or disposition of the Store Closing Assets free and clear of all liens, clams, and encumbrances; and

    g.  Granting related relief.

2.      In addition, the Debtors request that the Court schedule a final hearing within approximately 30 days of the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

---

[2]      Pursuant to Section 12.5 of the Consulting Agreement, Tiger and SB360 have syndicated their rights under the Consulting Agreement to include GA Retail Solutions, LLC to serve as a consultant under the Consulting Agreement (collectively, Tiger, SB360 and GA Group, the "Consultant").

37403441.4
4933-8487-4380, v. 2

**Jurisdiction and Venue**

3.      The United States Bankruptcy Court for the District of New Jersey (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order
of Reference of the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on
September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a
final order in connection with this Motion to the extent that it is later determined that the Court
absent consent of the parties, cannot enter final orders or judgments in connection herewith
consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105 and 363 of title 11 of the
United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the Local
Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

6.      On the date hereof (the "Petition Date"), the Debtors each commenced a case by
filing a petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have requested
that the chapter 11 cases (the "Chapter 11 Cases") be jointly administered.

7.      The Debtors are authorized to continue to operate their businesses and manage their
properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the
Bankruptcy Code.

8.      No trustee, examiner, or statutory committee of creditors has been appointed in the
Chapter 11 Cases.

37403441.4
4933-8487-4380, v. 2

9.      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Curt Kroll, Chief Financial Officer of Francesca's Acquisition, LLC in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>") filed contemporaneously with the Motion.[3]

### The Store Closing Sales

**I.      Overview**

10.      As more fully described in the First Day Declaration, these Chapter 11 Cases were commenced as a result of a generally difficult retail operating environment and the Debtors' acute liquidity crisis caused by an inability to secure anticipated funding for ongoing business operations in early January 2026.  While the Debtors evaluated all options for surviving as a going concern, the Debtors soon took immediate steps to start liquidating inventory in an expeditious and value-maximizing manner.

11.      As a result, and in exercise of their informed business judgment, the Debtors made the difficult decision to commence the Store Closing Sales.  The Debtors currently operate approximately 400 leased retail locations throughout the United States (collectively, the "<u>Closing Stores</u>").  In order to maximize the value of their assets and facilitate the Store Closing Sales, prior to the Petition Date, the Debtors sought the assistance of professionals with knowledge of the Debtors' operations and industry-specific expertise to help with such sales.  As a result, the Debtors ultimately entered into the Consulting Agreement with SB360 and Tiger (collectively, with GA Group after syndication, the "<u>Consultant</u>").  As of the Petition Date, the Consultant has been

---

[3]    Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

working with the Debtors for approximately three weeks — since January 16, 2026 — to help conduct the Closing Sales. [4]

12.     Now, the Debtors seek approval of, and authority to assume and continue performing under the Consulting Agreement. [5]  In seeking this relief, the Debtors have concluded in their business judgment that the Consultant's services are necessary (a) for a seamless and efficient store closing process, as contemplated by this motion and (b) to maximize the value of the saleable inventory located in the Closing Stores (the "Merchandise") and the associated furniture, furnishings, fixtures, and equipment that are located in the Closing Stores (the "FF&E" and, together with the Merchandise, the "Store Closing Assets").

13.     The Debtors believe this relief is appropriate because each entity comprising the Consultant is nationally recognized in the retail industry and has developed a familiarity with the Debtors' stores, assets, and operations, such that the Consultant is well-qualified and capable of performing the tasks contemplated under the Consulting Agreement in a manner that is value-maximizing for the Debtors' estates.  The Debtors also seek approval of the Store Closing Procedures and other relief that will (a) permit the Debtors to commence the Store Closing Sales in a timely manner as circumstances allow and (b) establish fair and uniform procedures to assist the Debtors in administering the Store Closing Sales efficiently, each of which is integral to maximizing the proceeds of the Store Closing Sales and, thus, the Debtors' estates.

## II.      The Consulting Agreement

---

[4]     Tiger Capital Group, LLC is affiliated with Tiger Finance, LLC ("Tiger Finance") and SB360 is affiliated with Second Avenue Capital Partners LLC ("SACP").  Tiger Finance is the administrative agent under the Debtors' prepetition secured financing, and SACP is a participated lender under such facility.

[5]     The Debtors reserve the right to modify, supplement, or otherwise revise **Exhibit 2** at any time before the final hearing on the Motion.

37403441.4
4933-8487-4380, v. 2

14.      Pursuant to the Consulting Agreement, the Consultant will serve as an independent consultant to the Debtors in connection with the Store Closing Sales.  The Consultant also will be the sole and exclusive consultant to the Debtors regarding the conduct of the Store Closing Sales. Assumption of the Consulting Agreement will allow the Debtors to utilize the capabilities, experience, and resources of the Consultant in performing the Store Closing Sales in a format that allows the Debtors to retain control over the process.  A summary of the key terms of the Consulting Agreement is set forth below.[6]  A copy of the Consulting Agreement is attached as **Exhibit 1** to the Proposed Order.

| Term | Consulting Agreement |
|---|---|
| **Services Provided by Consultant (§ 2.2)** | During the Sale Term, the Consultant will provide the following services:<br><br>• Provide qualified supervisors to supervise and assist the Company in its conduct of the Store Closing Sales, including such lead, regional, financial, and field supervisors as needed (after consultation with the Debtors) to assist the Company in conducting the Store Closing Sales and oversee the Store Closing Sales process;<br><br>• Provide the Company with oversight, supervision and guidance with respect to the conduct of the Store Closing Sales and the liquidation and disposal of the Merchandise and Owned FF&E from the Closing Stores as may be required to maximize Gross Proceeds and proceeds from Owned FF&E;<br><br>• Recommend and implement appropriate point of purchase, point of sale, website and external advertising to effectively sell the Merchandise and Owned FF&E during the Sale Term, consistent with the theme of the Store Closing Sales and the Sale Guidelines, it being understood that the Store Closing Sales will be advertised as specified by the Company on a per store basis as a "Going out of Business", "Store Closing", "Everything on Sale" or similar handles throughout the Sale Term; |

---

[6] The summary chart is for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Consulting Agreement, the Consulting Agreement shall govern in all respects. Capitalized terms used but not defined in the summary chart have the meaning ascribed to them in the Consulting Agreement.

37403441.4
4933-8487-4380, v. 2

| Term | Consulting Agreement |
|---|---|
| | • Advise the Company regarding appropriate discounting of Merchandise, appropriate staffing levels for the Closing Stores, and appropriate deferred compensation and incentive programs for Store Employees; |
| | • Oversee the display of Merchandise in the Closing Stores; |
| | • Assist the Company in the formulation and implementation of a loss prevention program designed to protect the Merchandise from theft or other shortages; |
| | • Assist the Company with accounting functions for the Closing Stores, including evaluation of sales of Merchandise by category, sales reporting and monitoring of expenses, in each case using Company's existing infrastructure and IT systems; |
| | • Recommend and implement the transfer and balancing of Merchandise between and among the Closing Stores to maximize Gross Proceeds during the Store Closing Sales; |
| | • Coordinate with the Company regarding an advertising and signage program; |
| | • Provide any Additional Merchandise to be procured by Consultant; and; |
| | • Provide any such other related services deemed necessary or prudent by the Company and the Consultant, or as reasonably requested by the Company under the circumstances giving rise to the Store Closing Sales. |
| **Sale Term; Vacating Closing Stores** <br><br> **(§§ 1 and 3.3(b); Sale Guidelines § D)** | • The "Sale Term" applicable to the Store Closing Sales shall begin on January 16, 2026 (the "Sale Commencement Date"), and end on the date as agreed between the parties, subject to extension by the Parties' mutual agreement in writing (the "Sale Termination Date"), with an estimated outside Sale Termination Date of April 30, 2026, subject to the Debtors' and the Consultant's right to mutually to agree to extend such date. <br><br> • Upon the conclusion of the Sale Term, Consultant shall leave the Closing Stores in broom clean condition, subject to Consultant's right pursuant to Section 3.3(b) of the Consulting Agreement to abandon in a neat and orderly manner all unsold FF&E. |
| **Expenses of Consultant** <br> **(§ 3.1)** | • Company shall be responsible for the payment of all expenses incurred in connection with the Store Closing Sales, including without limitation all Sale Expenses (as defined in the Consulting Agreement) (and Consultant shall not be responsible for any such expenses or Sale |

37403441.4
4933-8487-4380, v. 2

| Term | Consulting Agreement |
|---|---|
| | Expenses except as expressly provided for in Section 10.1 of the Consulting Agreement).<br><br>• Consultant Incurred Expenses shall not exceed the aggregate amount set forth on the Budget without the prior written consent of the Company; all such Consultant Incurred Expenses in excess of the preapproved Consultant Incurred Expenses shall be the sole responsibility of Consultant.<br><br>• The Company shall reimburse Consultant for any reasonable and documented Consultant Incurred Expense on a weekly basis in connection with the weekly settlement provided for in Section 4.1 of the Consulting Agreement upon presentation of invoices and statements for such expenses, which reimbursement or payment shall be in addition to any Base Fee, Incentive Fee and/or FF&E Fee (each as defined below) earned and payable hereunder.<br><br>• Upon execution of the Agreement and before the Sale Commencement Date, the Company shall pay directly or reimburse Consultant for Signage Costs and related costs in accordance with the Budget prior to Consultant ordering signs, estimated to be $600,000. The amounts were funded by the Debtors.<br><br>• Before the Sale Commencement Date, the Company shall fund to Consultant a deposit in the amount of $350,000 (the "Deposit"), which shall be held by Consultant until the Final Settlement in accordance with Section 4.2 of the Consulting Agreement and to be used to offset any unreimbursed and undisputed Consultant Incurred Expenses, Base Fee, Incentive Fee or FF&E Fee. In the event that any portion of the Deposit is utilized to fund such undisputed amounts prior to the Final Settlement, the Company shall replenish the Deposit for the amounts expended upon five (5) days' notice from the Consultant.  The unused portion of the Deposit shall be repaid to the Company as part of the Final Settlement |
| Consultant Compensation (§§ 3.2, 4.1(a)) | • **Base Fee and Incentive Fee**. In consideration of Consultant's provision of the Services provided for hereunder, Company shall pay a fee to Consultant equal to two percent (2.0%) of Gross Proceeds from the sale of Merchandise (the "Base Fee") plus an additional fee of one-half of one per cent (0.50%) (2.5% total) of Gross Proceeds (calculated from dollar one) to the extent that the Gross Recovery from the sale of the Merchandise exceeds forty five percent (45%) of the Retail Value of the Merchandise included in the Sale (the "Incentive Fee").<br><br>• **Additional Merchandise Fee**. The Company shall retain an amount equal to seven and one-half percent (7.5%) percent of the Additional Merchandise Proceeds from the sale of the Additional Merchandise |

8

| Term | Consulting Agreement |
|---|---|
| | (the "<u>Additional Merchandise Fee</u>"), and Consultants shall be paid by Company all remaining amounts from the sale of the Additional Merchandise.<br><br>• **Gross Rings**. For purposes of calculating Gross Proceeds, the Company shall keep (i) a strict count of gross register receipts less applicable sales taxes, and (ii) cash reports of sales within each Closing Store.  Register receipts shall show for each item sold the retail price (as reflected on Company's books and records) for such item, and the markdown or other discount granted by Consultant in connection with such sale ("<u>Gross Rings</u>"). The Company, after consultation with Consultant, shall have the right to decide the amount and duration of markdowns and discounts. The Company shall make all such records and reports available to Consultant during regular business hours upon reasonable notice.<br><br>• **Weekly Settlement**. On Wednesday of each week, commencing on the first Wednesday following the first Sale Commencement Date, the Company and the Consultant shall reconcile the results of the Sale for the prior week, including, without limitation, Gross Proceeds, sales of Owned FF&E, Additional Merchandise Proceeds, Sale Expenses, Owned FF&E sale-related expenses, and all fees payable hereunder including the Base Fee, Incentive Fee and the FF&E Fee. The Company shall promptly pay all amounts due to Consultant for the previous week (subject to the limitations set forth in the Budget and the FF&E Budget) including the Additional Merchandise Proceeds. |
| **Conduct of the Store Closing Sales; Other Matters** (§§ 4.2, 5.1, 5.2, 10.1, 10.3, 2.4, 10.4, 10.6) | • No later than ten (10) business days following the end of the final Sale Term, the Company and Consultant shall complete a settlement of all amounts contemplated by this Agreement (the "<u>Final Settlement</u>"), including, without limitation, the settlement of the Additional Merchandise Proceeds, the determination and payment of any further fees, including any Base Fee and Incentive Fee due to the Consultant, and all reimbursements and payments contemplated hereby (subject to the limitations set forth in the Budget and the FF&E Budget).<br><br>• Except as set forth in Section 8.2 of the Consulting Agreement, Consultant shall have no liability to the Company's employees (including, without limitation, all the Closing Store Employees and any of Company's former employees) of any kind or nature whatsoever, including, without limitation, with respect to severance pay, termination pay, vacation pay, pay in lieu of reasonable notice of termination, WARN Act payments, or any other costs, expenses, obligations, or liabilities arising from Company's employment of such Closing Store Employees prior to, during, and subsequent to the Sale Term.  Other than advising the Company that Consultant no longer desires to utilize the services of any employee in connection with the Sale, Consultant shall |

37403441.4
4933-8487-4380, v. 2

| Term | Consulting Agreement |
|------|---------------------|
| | not have the right to change the terms of employment of any Closing Store Employees.  At the request of the Company, in the event that any Closing Store Employees discontinue their services during the Sale Term, Consultant agrees to supplement or replace such Closing Store Employees as deemed necessary upon approval by the Company.  Any such incremental expenses arising therefrom shall be deemed to be Sale Expenses.<br><br>• The Company shall collect all sales, excise, or gross receipts taxes and shall be solely responsible for reporting and paying the same to the appropriate taxing authorities in accordance with applicable law.  The Company shall prepare and process all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities; and the Company shall pay the same when due. Consultant shall provide all assistance reasonably required or requested by the Company in connection with the preparation and processing of any such reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities.<br><br>• Without limiting any other term or provision of this Agreement, during the Sale Term, the Company shall provide Consultant, with (i) Central Services; (ii) employees at the Closing Stores necessary or appropriate to implement and conduct the Sale, subject to Section 5.2 above, and (iii) peaceful use and occupancy of, and reasonable access (including reasonable before and after hours access and normal utilities/phone service) to, the Closing Stores and the Company's corporate offices for the purpose of preparing for, conducting, and completing the Sale as contemplated hereby.<br><br>• Although Consultant shall undertake its obligations under this Agreement in a manner designed to maximize the benefits to Company, Company expressly acknowledges that Consultant is not guaranteeing the results of the Sale or insuring the Merchandise.<br><br>• During the first thirty (30) days of the Sale Term, the Company and Consultant shall honor gift cards and merchandise credits at the Closing Stores in accordance with store-level operation procedures to be mutually agreed upon between the Company and Consultant.  No gift cards shall be sold from the Closing Stores during the Sale Term. |
| FF&E Disposition (§ 3.3(a)) | • In addition to the consulting Services provided for herein with respect to the sale of Merchandise, with respect to furniture, fixtures and equipment owned by Company and located at the Closing Stores, in the Company's corporate offices and at the warehouse (collectively, the "Owned |

10

| Term | Consulting Agreement |
|------|---------------------|
| | FF&E"), Consultant shall sell the Owned FF&E for the Company's benefit. Consultant shall advertise in the context of advertising for the Sale that items of Owned FF&E at Closing Stores are available for sale and shall contact and solicit known purchasers and dealers of furniture and trade fixtures.<br><br>• In consideration of providing such services, Consultant shall retain twenty percent (20%) of the gross receipts (net only of applicable sales taxes and budgeted sale expenses, if any and without duplication, established by mutual agreement of the Company, and the Consultant) from all sales of Owned FF&E (the "FF&E Fee").<br><br>• In addition, Company shall reimburse Consultant for Consultant's reasonable and documented out–of–pocket expenses incurred in connection with the sale or other disposition of the Owned FF&E pursuant to a budget established by mutual agreement of the Company and the Consultant (the "FF&E Budget"). |
| Additional Merchandise (§ 9) | • In connection with the Store Closing Sales, Consultant shall have the right, at Consultant's sole cost and expense, to supplement the Merchandise in the Store Closing Sales at the Closing Stores with additional goods procured by Consultant which are of like kind, and no lesser quality, to the Merchandise at the Closing Stores ("Additional Merchandise"). The Additional Merchandise shall be purchased by Consultant as part of the Sale and delivered to the Closing Stores at Consultant's sole expense (including as to freight, insurance and shipping relative to shipping such Additional Merchandise to the Closing Stores). In consideration for payment of the Additional Merchandise Fee to the Company, Consultant may utilize the Company's warehouse for the receipt, processing, handling and distribution of such Additional Merchandise. Sales of Additional Merchandise shall be run through Company's cash register systems and identified in a manner so as to distinguish the sale of Additional Merchandise from the sale of Merchandise. To the extent that items of Additional Merchandise are the same items as items of the Company's on hand Merchandise ("Same Units"), as each such item of Same Units is sold, for purposes of identifying and allocating such sale as a sale of Merchandise or Additional Merchandise, until such time as the number of such Same Units that were on hand as of the Sale Commencement Date is sold, such sales shall be allocated to the Sale of Merchandise. Once the sale of Same Units totals the total on hand Same Units contained in Merchandise for such items has been reached, then all future sales of such Same Units shall be allocated to the sale of Additional Merchandise.<br><br>• Consultant and the Company intend that the transactions relating to the Additional Merchandise are, and shall be construed as, a true |

| Term | Consulting Agreement |
|------|---------------------|
| | consignment from Consultant to Company in all respects and not a consignment for security purposes. At all times and for all purposes the Additional Merchandise and their proceeds shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Merchandise or their proceeds. The Additional Merchandise shall at all times remain subject to the exclusive control of Consultant.<br><br>• The Company shall, at Consultant's request and at Consultant's sole cost and expense, insure the Additional Merchandise and, if required, promptly file any proofs of loss with regard to same with the Company's insurers. Consultant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Merchandise<br><br>• The Company acknowledges that the Additional Merchandise shall be consigned to Company as a true consignment under Article 9 of the Code. Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Merchandise and (ii) the Additional Merchandise proceeds, which security interest shall be deemed perfected pursuant to the Approval Order, if any, and Consultant shall file UCC financing statements or providing notifications to any prior secured parties. Consultant is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Consultant's interest in the Additional Merchandise as consigned goods thereunder and the Company as the consignee therefor, and Consultant's security interest in and lien upon such Additional Merchandise and Additional Merchandise proceeds.<br><br>• Upon execution hereof, the Company consents to Consultant contacting the Company's vendors regarding the purchase of merchandise for the Sale and any such merchandise procured by Consultant from the Company's vendors shall be treated as Additional Merchandise hereunder. |
| **Company's and Consultant's Insurance Obligations (§§ 11.1, 11.2, 11.3)** | • The Company shall maintain throughout the Sale Term (i) insurance with respect to the Merchandise at the Closing Stores and any storage facility in amounts and on such terms and conditions as are consistent with the Company's ordinary course operations and (ii) casualty and liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance, auto liability insurance on an occurrence basis in an amount of at least $1,000,000 per occurrence and $2,000,000 in the aggregate, and umbrella coverage of at least $5,000,000 covering injuries to persons and property in or in connection with the operation of the Closing Stores), and shall cause Consultant to |

12

| Term | Consulting Agreement |
|---|---|
| | be listed as an additional insured with respect to all such policies.  The Company shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from the negligence, willful misconduct or unlawful acts of Consultant or Supervisors, or their employees, representatives, or agents. Additionally, throughout the Sale Term, the Company shall maintain, in such amounts as it currently has in effect, workers' compensation insurance in compliance with all applicable statutory requirements.<br><br>• Consultant shall maintain, throughout the Sale Term, casualty and liability insurance policies (including, but not limited to, comprehensive public liability insurance, auto liability insurance and workers' compensation, statutory disability and employer's liability insurance) covering injuries to persons and property in or in connection with the operation of the Closing Stores on an occurrence basis in an amount of at least $1,000,000 per occurrence and $2,000,000 in the aggregate and umbrella coverage of at least $5,000,000, and shall cause the Company to be named an additional insured with respect to such policies.<br><br>• Except as set forth in Section 8.2, the Company and the Consultant agree that Company shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Closing Stores before, during and after the Sale Term, except to the extent any such claim arises from the negligence, willful misconduct, or unlawful acts of the Consultant or any Supervisor engaged by Consultant under the terms of this Agreement. |
| **Indemnification by Consultant (§ 8.2)** | Consultant shall indemnify and hold Company and its affiliates, and their respective officers, directors, employees, agents, lenders and independent contractors (collectively, "Company Indemnified Parties"), harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:<br><br>• Consultant's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;<br><br>• any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Company (including, without limitation, any Closing Store Employees) by Consultant or any of Consultant's representatives (including, without limitation, any Supervisor); |

13

| Term | Consulting Agreement |
|------|---------------------|
| | <ul><li>any claims by any party engaged by Consultant as an employee or independent contractor (including, without limitation, any Supervisor) arising out of such employment or engagement; except where due to the negligence or willful misconduct of Company or Company Indemnified Parties or from a breach of the terms hereof by Company;</li><li>any consumer warranty or products liability claims relating to any Additional Merchandise; and</li><li>the gross negligence, willful misconduct or unlawful acts of Consultant or any Supervisor or any of their respective officers, directors, employees, agents or representatives; provided that Consultant shall not be obligated to indemnify any Company Indemnified Party from or against any claims, demands, penalties, losses, liability or damages arising primarily from any Company Indemnified Party's gross negligence, willful misconduct or unlawful act.</li></ul> |
| **Indemnification by Company (§ 10.7)** | Company shall indemnify and hold the Consultant and its affiliates, and their respective officers, directors, employees, agents and independent contractors (collectively, "Consultant Indemnified Parties"), harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:<ul><li>the Company's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered in connection herewith;</li><li>any failure of the Company to pay to its employees any wages, salaries or benefits due to such employees during the Sale Term;</li><li>any consumer warranty or products liability claims relating to any Merchandise;</li><li>any liability or other claims asserted by customers, any of Company's employees, or any other person against any Consultant Indemnified Party (including, without limitation, claims by employees arising under collective bargaining agreements, worker's compensation or under the WARN Act); except where due to the negligence, willful misconduct or unlawful acts of Consultant or from a breach of the terms hereof by Consultant;</li></ul> |

37403441.4
4933-8487-4380, v. 2

| Term | Consulting Agreement |
|------|----------------------|
|  | • any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees, agents, or representatives of Consultant (including, without limitation, any Supervisors) by Company or any of Company's employees, agents, or representatives (including, without limitation, any Company employees); and<br><br>• the gross negligence, willful misconduct or unlawful acts of the Company or any of its officers, directors, employees, agents or representatives; provided that Company shall not be obligated to indemnify any Consultant Indemnified Party from or against any claims, demands, penalties, losses, liability or damages arising primarily from any Consultant Indemnified Party's gross negligence, willful misconduct or unlawful act. |

## III.    The Store Closing Procedures

15.    The Debtors seek approval of streamlined procedures (*i.e.*, the Store Closing Procedures) to sell or transfer the Store Closing Assets, in each case free and clear of liens, claims, and encumbrances.  The Consultant will effectuate the Store Closing Sales in accordance with the Store Closing Procedures.  The Debtors have determined, in the exercise of their business judgment and in consultation with their advisors, that the Store Closing Procedures provide the best and most efficient means of selling the Store Closing Assets to maximize the value to their estates.  The Debtors seek emergency approval of the Store Closing Procedures to facilitate their efforts at maximizing the recovery value of the Debtors' Store Closing Assets and minimizing occupancy costs associated with the Closing Stores.

16.    The Store Closing Procedures are consistent in all material respects with store closing procedures reviewed and approved by courts nationwide in approving the conduct of similar store closing sales.  The Debtors have therefore determined, in the exercise of their business judgment and in consultation with their advisors, including the Consultant, that the Store Closing

15

Procedures provide the best, most efficient, and most organized means of selling the Store Closing Assets to maximize their value to the estates.

### A.    Applicable State Laws and Dispute Resolution Procedures

17.    Certain states in which the Closing Stores are located have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including (but not limited to) state and local laws, statutes, rules, regulations, and ordinances (the "Applicable Sale Laws").  The Applicable Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, and bulk sale restrictions and augmentation limitations that would otherwise apply to the Store Closing Sales.   Such requirements may hamper the Debtors' ability to maximize value in selling their inventory. Subject to the Court's approval, the Debtors intend to conduct the Store Closing Sales in accordance with the Store Closing Procedures and, to the extent such procedures conflict with the Applicable Sale Laws, the Interim Order, Final Order or the Store Closing Procedures, as the context requires, shall control.

18.    To facilitate the orderly resolution of any disputes between the Debtors and any Governmental Units (as defined in section 101(27) of the Bankruptcy Code) arising due to the Store Closing Procedures and the alleged applicability of any Applicable Sale Laws, the Debtors respectfully request that the Court authorize the Debtors to implement the dispute resolution procedures set forth in the Interim Order (and thereafter the Final Order) (the "Dispute Resolution Procedures").

### B.    Fast Pay Laws

19.    Many states in which the Debtors operate have laws and regulations that require the Debtors to pay an employee substantially contemporaneously with their termination (the "Fast Pay

Laws" and, together with the Applicable Sale Laws, the "Applicable State Laws"). These laws often require payment to occur immediately or within a period of only a few days from the date such employee is terminated.

20.    The nature of the Store Closing Sales contemplated by this motion may result in the termination of employees related to the Closing Stores at or near the end of the Store Closing Sales. While the Debtors intend to pay their terminated employees as expeditiously as possible and under normal payment procedures, the Debtors' payroll systems may be unable to process the payroll information associated with these terminations in a manner that will be compliant with the Fast Pay Laws. Under ordinary circumstances, the Debtors' payroll department is able to coordinate delivery of final checks to coincide with an employee's final day of work where required by state law. This process requires the Debtors' payroll department to calculate individual termination payments, prepare each termination payment check, obtain authorization for each such check, and then prepare each such check for mailing. Given the number of employees who may be terminated at the same instance in connection with the Store Closing Sales, this process could take several days, making compliance with the Fast Pay Laws burdensome to the Debtors' estates, if not impossible. Thus, the Debtors respectfully request that the Court authorize the Store Closing Sales contemplated by this motion without the necessity to comply with the deadlines imposed by the Applicable State Laws.

**C.    Lease Restrictions**

21.    The Debtors also request a waiver of any contractual restrictions that could otherwise inhibit or prevent the Debtors from maximizing value for creditors through the Store Closing Sales. In certain cases, the contemplated Store Closing Sales and store closures may be inconsistent with certain provisions of leases, subleases, or other documents with respect to the

17

premises in which the Debtors operate, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions, and restrictions (including, without limitation, "go dark" provisions, going out of business and/or liquidation sales, and landlord recapture rights), or other similar documents or provisions. These restrictions would also hamper the Debtors' ability to maximize value in selling their inventory.

22.    The Debtors further request that no entity (including, without limitation, landlords, licensors, property owners, property managers, shopping center managers, service providers, utility, personnel, or creditors, and all persons acting for or on their behalf) be permitted to interfere with or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors in any court (other than in this Court) or before any administrative body that in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales, store closures, or the advertising and promotion (including through the posting of signs and use of sign walkers) of the Store Closing Sales.

23.    The Debtors anticipate potential concerns from landlords and will be keen to resolve such concerns as expeditiously as possible. In similar cases, debtors have proposed store closing procedures with materially similar lease restriction waivers. Consistent with store closing procedures in other cases, the Debtors respectfully request the authority to enter into "side letters" with the applicable landlord to resolve any landlord concerns that may arise (collectively, the "Side Letters"). Side letters may be used to set out agreed-upon terms that may differ from the Store Closing Procedures. To the extent that the terms of a Side Letter conflict with the Store Closing Procedures, the Side Letter will govern; provided, however, in all circumstances the terms of the Interim Order, and thereafter any Final Order, shall govern and control. The authority to enter into Side Letters will provide the Debtors with flexibility to address  concerns as they arise, leading to

more efficient sales with increased landlord support during this period.  A summary of the material

terms of the Store Closing Procedures is set forth below.[7]

| Store Closing Procedures |
|---|
| 1.     The Store Closing Sales will be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores. |
| 2.     The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Company had been operating such Store on a Sunday. |
| 3.     On "shopping center" property, Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or unless distribution is customary in the "shopping center" in which such Store is located; provided, however, that Consultant may solicit customers in the Stores themselves.  On "shopping center" property, Consultant shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord. |
| 4.     At the conclusion of the Sale, Consultant shall vacate the Stores in broom clean condition subject to the right to abandon unsold FF&E, and shall leave the Stores in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, provided, however, that the Company and Consultant hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Store. |
| 5.     Consultant shall be permitted to utilize display, hanging signs, and interior banners in connection with the Store Closing Sales; provided however that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. Consultant may advertise the Sale as a "going out of business", "store closing", "everything must go", "sale on everything", or similar themed sale. Consultant shall not use neon or day-glo on its display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines or pursuant to the terms of the applicable lease with respect to a Closing Store. Nothing contained herein shall be construed to create or impose upon Consultant any additional restrictions not contained in the applicable lease agreement.  In addition, Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed |

---

[7]    The following summary chart is for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Consulting Agreement, the Consulting Agreement shall govern in all respects. Capitalized terms used but not defined in the summary chart have the meaning ascribed to them in the Consulting Agreement.

37403441.4
4933-8487-4380, v. 2

| Store Closing Procedures |
|---|
| mall common area; <u>provided</u>, <u>however</u>, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Closing Store and shall not be wider than the storefront of the Store.  In addition, Consultant shall be permitted to utilize sign walkers in a safe and professional manner. |
| 6.      Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final." |
| 7.      Except with respect to the hanging of exterior banners, Consultant shall not make any alterations to the storefront or exterior walls of any Stores. |
| 8.      Consultant shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Store. |
| 9.      Consultant shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices. |
| 10.     Consultant shall have the right to sell all FF&E located at the Closing Stores. Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines at the Closing Stores.  The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through the back-shipping areas at any time, or through other areas after store business hours. |

**D.    Abandonment**

24.      In effectuating the Store Closing Sales, the Debtors intend to sell all Store Closing Assets, as set forth herein.  The Debtors may determine, however, in their business judgment, that certain personal property, Merchandise, and Owned FF&E (the "<u>Burdensome Property</u>") will be difficult or expensive to remove, ship, or store, such that the economic benefits of removing, selling, shipping, or storing some or all of the Burdensome Property will be exceeded by the attendant costs thereof.  To the extent the Burdensome Property exceeds the scope of the property abandoned pursuant to the Store Closing Procedures — such as Burdensome Property held by shippers or other agents of the Debtors — the Debtors request the Court's approval to abandon any Burdensome Property for the benefit of their estates and creditors.

37403441.4
4933-8487-4380, v. 2

## E.    Customer Programs

25.    The Store Closing Sales require that the Debtors make certain modifications to their customer programs to reflect new realities.  Accordingly, the Debtors intend to implement the following changes, which will be clearly posted for customers to see at cash registers and on the Debtors' website for the duration of the Store Closing Sales:

- **Returns**.  On January 14, 2026, the Company announced that from and after such date, all sales were final.  Accordingly, the Debtors do not believe customers will be eligible to return items after the Petition Date consistent with the Company's "customary practices and policies in effect on the Sale Commencement Date.

- **Gift Cards**.  During the first thirty (30) days of the Sale Term, the Company and Consultant shall honor gift cards and merchandise credits at the Stores in accordance with store-level operation procedures to be mutually agreed upon between the Company and Consultant.  No gift cards shall be sold from the Stores during the Sale Term.

- **Latent Defects**.  The Debtors shall comply with all state and federal laws relating to implied warranties for latent defects, and such laws are not superseded by the Store Closing Sales or the use of the terms "as is" or "final sale," as set forth in the Interim and Final Orders.

## F.    Sale Incentive Program

26.    The Debtors seek approval of non-insider incentive programs for the Sales Employees (defined herein) that are needed to ensure an orderly and efficient Store Closing Sale process.  The Debtors have notified all of their employees of the Store Closing Sales and (to the extent required by applicable law) already have sent their employees WARN notices.  The Debtors will need many employees in their stores and headquarters to complete the Store Closing Sales effectively and efficiently (collectively, the "Sales Employees").  Sales Employees will assist the Consultant with the conduct of the Store Closing Sales (and any transition period, as needed), and complete financial and legal reporting requirements.

27.    The Debtors and their prepetition lenders recognize that absent a financial incentive to meet certain goals, the Sales Employees may not be sufficiently motivated to assist in the Store

Closing Sales.  Accordingly, the Debtors' budget contemplates reasonable incentive payments to certain store-level, warehouse, and corporate employees to help facilitate the Store Closing Sales process, including both retention and sales program bonuses.

**Basis for Relief**

I.    **Business Justification Exists Under Sections 363(b) and 365 of the Bankruptcy Code for the Debtors to Assume and Perform under the Consulting Agreement.**

28.    Assumption and performance under the Consulting Agreement represents a sound exercise of the Debtors' business judgment and is permissible under section 363 of the Bankruptcy Code.  Under section 363(b), a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The Fifth Circuit has held that debtors must articulate a "business justification" for using, selling, or leasing property outside of the ordinary course of business.  *See, e.g.*, *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) (outside of the ordinary course of business, "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property") (internal quotation marks omitted)).  The "business judgment standard is flexible and encourages discretion." *Id.*

29.    Section 105 of the Bankruptcy Code provides further support for entry of an order approving the Debtors' entry into the Consulting Agreement.  Section 105 of the Bankruptcy Code empowers the Court "to issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 105(a) operates "to facilitate the implementation of other Bankruptcy Code provisions," and in so doing it provides a "bankruptcy court with broad authority to exercise its equitable powers." *Ameriquest Mortgage Co. v. Nosek* (*In re Nosek*), 544 F.3d 34, 43 (1st Cir. 2008) (internal citations omitted).    These

equitable powers are granted to effectuate the policies and goals of chapter 11 reorganization, which are to rehabilitate the debtor, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989), and to "create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately." *Mich. Bureau of Workers' Disability Comp.* v. *Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 287 (S.D.N.Y. 1987).

30.    Assumption of and performance under the Consulting Agreement is beneficial to the Debtors' estates, and, thus, is a reasonable exercise of the Debtors' business judgment.  In consultation with their advisors, the Debtors determined that the Store Closing Assets should be monetized for the benefit of the Debtors' estates and their creditors.  Further, after arm's-length negotiations, the Consulting Agreement contains the most-favorable terms available under the circumstances.

31.    As noted above, prior to the commencement of these Chapter 11 Cases the Debtors, with the assistance of the Consultant, commenced the process of conducting the Store Closing Sales at each of the Closing Stores.  Moreover, the Consultant has extensive expertise in conducting similar sales and can oversee, and assist in the management and implementation of, the Store Closing Sales in an efficient and cost-effective manner.  Assumption of and performance under the Consulting Agreement will enable the Debtors to continue utilizing the Consultant's skills and resources to efficiently conduct the Store Closing Sales for the benefit of all stakeholders. If the Debtors are not authorized to assume and perform under the Consulting Agreement on an interim basis, the Debtors will be unable to efficiently continue the Store Closing Sales, and the Debtors' estates, creditors, and other stakeholders could be substantially harmed.  For example, the Debtors' estates would lose the benefit of the momentum that has already been realized by the

pre-petition commencement of the Store Closing Sales.  Finally, given the Consultant's knowledge of Debtors' business operations and pre-petition preparation for the Store Closing Sales, the Debtors believe the Consultant is best suited to conduct the process efficiently and effectively.

II.    **Conducting the Store Closing Sales Pursuant to the Store Closing Procedures Is Authorized Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

32.    The Court may authorize the Debtors to consummate the Store Closing Sales pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  As described above, section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   Under section 105(a), courts may authorize actions that are essential to the continued operation of a debtor's business.  The Fifth Circuit has acknowledged that section 105 confers broad powers on bankruptcy courts.

> [Section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case.  The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction.

*Davis* v. *Davis* (*In re Davis*), 170 F.3d 475, 492 (5th Cir. 1999) (internal citation and quotation marks omitted).

33.    Section 363(b)(1) of the Bankruptcy Code, as described above, governs asset sales outside of a debtor's ordinary course of business, providing that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   The Debtors need only show a legitimate business justification for the proposed action as "[s]ection 363 impliedly requires the Court to find that it is good business judgment for the Debtor to enter into the transaction."  *See, e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (agreeing with *Comm. of Equity Sec. Holders* v. *Lionel Corp.*

(*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983)) (internal quotations omitted).    Parties

challenging a debtor's business decision must make a showing of "self-dealing, bad faith and gross

negligence." *See In re Think3, Inc.*, 529 B.R. 147, 173 (Bankr. W.D. Tex. 2015) (overcoming the

presumption of business judgement requires conduct "committed with gross negligence or beyond

the 'bounds of reason'"); *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations

omitted).

34.     A major premise of chapter 11 is the continued and uninterrupted operation of the

debtor in possession to the greatest extent possible and the maximization of the value of the estate.

For this reason, store closing sales are a routine occurrence in chapter 11 cases involving retail

debtors.  *See In re Ames Dept. Stores*, 136 B.R. 357, 359 (S.D.N.Y. 1992) (noting that liquidation

sales are an important part of "overriding federal policy requiring [a] Debtor to maximize estate

assets").    Thus, approval of the Store Closing Sales and the Store Closing Procedures is consistent

with the Court's power to carry out the provisions of the Bankruptcy Code.    *Id.*; *see also In re*

*Southmark Corp.*, 113 B.R. 280, 281 (Bankr. N.D. Tex. 1990) ("[T]he court may use [section]

105(a) to fashion orders that are necessary or appropriate to further a substantive provision of the

Code.").

35.     Sufficient business justification exists to approve the Store Closing Sales and the

Store Closing Procedures.    Prior to the Petition Date, the Debtors and their advisors executed an

extensive analysis of the Debtors' existing store portfolio in hand with the Debtors' strained

liquidity.  The Debtors determined, in their business judgment and with the assistance of their

advisors, that it is in the best interests of the Debtors' estates, creditors, and other stakeholders to

close their brick-and-mortar store locations and maximize the value of the Debtors' estates through

the Store Closing Sales.

37403441.4
4933-8487-4380, v. 2

36.     Thus, the Debtors have determined that the Store Closing Sales represent the best method to maximize recoveries to the Debtors' estates with respect to the Store Closing Assets, while balancing the potentially competing concerns of landlords and other parties in interest. There are meaningful amounts of Merchandise and Owned FF&E, in the aggregate, that will be monetized most efficiently and quickly through an orderly, uniform process conducted in consultation with an experienced store closing sale consultant.

37.     Further, approval of the Store Closing Sales and the Store Closing Procedures would avoid immediate and irreparable harm to the Debtors' estates.    Any interruption in the conduct of the Store Closing Sales would diminish the recovery tied to monetization of the Store Closing Assets for several important reasons.    *First*, the Debtors will realize an immediate benefit in terms of financial liquidity upon the sale of the Store Closing Assets and the termination of operations at the Closing Stores.    *Second*, uninterrupted and orderly Store Closing Sales will allow the Debtors to timely reject leases associated with the Closing Stores and, therefore, avoid the accrual of unnecessary administrative expenses for rent and related costs.    *Third*, any delay of the Store Closing Sales may cause the Debtors to incur substantial additional post-petition rent and other occupancy costs with no corresponding net benefit to their estates.

38.     Courts have recently approved store closing procedures in chapter 11 cases on an interim basis, and numerous courts have granted retail debtors interim authority to implement such procedures at the outset of the chapter 11 process.    *See, e.g.*, *In re: American Signature Furniture, Inc. et al.* No. 25-12105 (Bankr. Del. November 26, 2025) (authorizing and approving procedures in connection with the debtors' continuation of store closing sales on an interim basis as part of first day relief); *In re Soft Surroundings Holdings, LLC*, No. 23-90769 (Bankr. S.D. Tex. Sep. 12, 2023) (same); *In re Stage Stores, Inc*., *et al.*, No. 20-32564 (Bankr. S.D. Tex. May 13, 2020)

37403441.4
4933-8487-4380, v. 2

(same); *In re: Conn's Inc., et. al*. No. 24-33357 (Bankr. S.D. Tex. Aug. 22, 2024) (same); *In re Bed Bath & Beyond Inc*., No. 23-13359 (Bankr. D.N.J. April 25, 2023) (same); *In re David's Bridal, LLC*, No. 23-13131 (Bankr. D.N.J. April 17, 2023) (same); *In re: Tuesday Morning Corporation, et al.*, No 23-90001 (ELM) (Bankr. N.D. Texas Feb. 23, 2023); *In re Christopher & Banks Corporation, et al*., No. 21-10269 (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc., et al*., No. 20-18445 (Bankr. D.N.J. Jul. 15, 2020) (same); *In re SLT Holdco, Inc., et al*., No. 20-18368 (Bankr. D.N.J. Jul. 13, 2020) (same); *In re Modell's Sporting Goods, Inc., et al*., No. 20-14179 (Bankr. D.N.J. Mar. 13, 2020).   The Store Closing Procedures are substantially similar to the store closing procedures approved in the foregoing cases.

III.    **The Sale of Store Closing Assets Free and Clear of all Liens, Encumbrances, and Other Interests Is Warranted under Section 363(f) of the Bankruptcy Code.**

39.     The Debtors request approval to sell the Store Closing Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code.   A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:   (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in *bona fide* dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to a money satisfaction of such interest.   *See* 11 U.S.C. § 363(f); *see also Citicorp Homeowners Servs., Inc.* v. *Elliot* (*In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) of the Bankruptcy Code is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).

37403441.4
4933-8487-4380, v. 2

40.     With respect to any party asserting a lien, claim, or encumbrance against the Store
Closing Assets, the Debtors anticipate that they will be able to satisfy one or more of the
conditions set forth in section 363(f).  Among other conditions, the Debtors understand that their
prepetition first lien lender has consented to the proposed sales on the terms proposed in the Motion.
The Debtors anticipate that, to the extent there are other liens on the Store Closing Assets, all
holders of such liens will consent to the sales because they provide the most effective, efficient,
and time-sensitive approach to realizing proceeds for, among other things, the repayment of
amounts due to such parties.  Subject to the terms of the Debtors' proposed adequate protection
package for its prepetition lender, any and all liens on the Store Closing Assets that are sold under
the Store Closing Sales would attach to the remaining net proceeds of such sales with the same
force, effect, and priority as such liens currently have on these assets, subject to the rights and
defenses, if any, of the Debtors and of any party-in-interest with respect thereto.

41.     Moreover, any identified lienholders will receive notice and will be given sufficient
opportunity to object to the relief requested herein.  Any such entity that does not object to the sale
should be deemed to have consented.  *See Futuresource LLC v. Reuters Ltd*., 312 F.3d 281, 285-
86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an
interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the
interest holder, and lack of objection (provided of course there is notice) counts as consent.  It
could not be otherwise; transaction costs would be prohibitive if everyone who might have an
interest in the bankrupt's assets had to execute a formal consent before they could be sold."
(internal citations omitted)); *Matter of Tabone, Inc*., 175 B.R. 855, 858 (Bankr. D.N.J. 1994)
(finding failure to object to sale free and clear of liens, claims, and encumbrances satisfies section
363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same); *see also In re Enron Corp*., No. 01-16034, 2003

28

WL 21755006, at *2 (Bankr. S.D.N.Y. Jul. 28, 2003) (order deeming all parties who did not object

to proposed sale to have consented under section 363(f)(2)).

42.    Accordingly, the Debtors submit that the sale of the Store Closing Assets in the

manner described herein satisfies the statutory requirements of section 363(f) of the Bankruptcy

Code and should, therefore, be free and clear of any liens, claims, encumbrances, and other

interests.

**IV.    Sales of Store Closing Assets Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

43.    Because the customers in respect of the Store Closing Sales act in good faith, they

are entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal.  Purchasers are provided this

protection so long as they leased or purchased the assets in "good faith."  *Id.*  Although the

Bankruptcy Code does not define "good faith purchaser," one circuit court has stated that a good

faith purchaser is "one who purchases in 'good faith' and for 'value.'"  *In re Gucci*, 126 F.3d 380,

390 (2d Cir. 1997) (internal citations omitted); *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir.

1986); *see* 3 Collier on Bankruptcy ¶ 363.11 (Richard Levin & Henry J. Sommer eds., 16th ed.).

Courts generally conclude that a purchaser has acted in good faith as long as the consideration is

adequate and reasonable and the terms of the transaction are fully disclosed. *In re Abbotts Dairies*,

788 F.2d at 149-50.  To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Vetter Corp.*, 724 F.2d 52, 56 (7th Cir. 1983) (emphasis omitted) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m)); *see* 3 Collier on Bankruptcy ¶ 363.11 (Richard Levin & Henry J. Sommer eds., 16th ed.).

44.    Here, the customers of the Store Closing Sales are unaffiliated third parties acting for *bona fide* personal purposes.  Each sale of a Store Closing Asset will be mutually beneficial to both parties, and the terms thereof will be fully disclosed to each customer.  A fair and transparent process ensures the sales are at arm's length, without collusion or fraud, and entered into in good faith.  Accordingly, the Debtors request that the Court determine that the customers act at all times in good faith and, as a result, are entitled to the full protections of good faith purchasers under section 363(m) of the Bankruptcy Code.

## V.    Waiver of Compliance with Applicable State Laws and Approval of the Dispute Resolution Procedures Are Warranted.

45.    As a necessary part of the Store Closings and Store Closing Procedures, the Debtors request the authority to conduct the sales in accordance with the Store Closing Procedures and without complying with Applicable Sale Laws.  Although the Debtors intend to comply with state and local health and safety laws and consumer protection laws in conducting the sales, many Applicable Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing, liquidation, or similar sales.  Additionally, compliance with Fast Pay Laws would require the Debtors to pay terminated employees within a time frame that would be detrimental to the conduct of these Chapter 11 Cases, if not impossible.

37403441.4
4933-8487-4380, v. 2

46.    To eliminate the time, delay, and expense associated with the administrative procedures necessary to comply with the Applicable Sale Laws, the Debtors propose the Store Closing Procedures as a way to streamline the administrative burdens on their estates while still adequately protecting the broad and varied interests of both landlords and applicable governmental agencies charged with enforcing any Applicable Sale Laws that may apply to the Store Closings. As such, the Debtors believe the Store Closing Procedures mitigate any concerns that their landlords or governmental agencies may raise with respect to the Store Closings, and therefore, the below requested relief seeking the waiver of certain state and local laws and lease provisions is appropriate.  Further, creditors and the public interest are adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of this Court because the Debtors are only seeking interim relief, and parties in interest will be able to raise any further issues at the final hearing.

47.    There is strong support for granting the Debtors authority to not comply with the Applicable Sale Laws.    *First*, it is generally accepted that many state statutes and regulations, including in states where the Debtors have locations, provide that, if a liquidation or bankruptcy sale is court-authorized, a company need not comply with the Applicable Sale Laws.    *See, e.g.*, Fla. Stat. Ann. 559.25(2) (same); Ga. Code Ann. § 10-1-393(b)(24)(C)(iv) (same); 815 ILCS 350/3 (exempting from the provisions of the chapter sales pursuant to any court order); La. Rev. Stat. Ann. § 51:43(1) (same); N.Y. Gen. Bus. Law § 584(a) (same); Or. Rev. Stat. Ann. § 646A.100(2)(b) ("'Going out of business sale' does not include a sale conducted by a bankruptcy trustee."); Tex. Bus. & Com. Code Ann. § 17.91(3) (exempting from subchapter sales conducted pursuant to court order).    *Second*, pursuant to section 105(a) of the Bankruptcy Code, the Court has the authority to permit the Store Closing Sales to proceed notwithstanding contrary Applicable State Laws as it is

31

37403441.4
4933-8487-4380, v. 2

Case 26-11312-MEH    Doc 3    Filed 02/05/26    Entered 02/05/26 10:17:51    Desc Main
Document        Page 32 of 96

essential to the continued operation of the Debtors' business.    *Third*, this Court will be able to supervise the Store Closing Sales because the Debtors and their assets are subject to this Court's exclusive jurisdiction.    *See* 28 U.S.C. § 1334.    Moreover, 28 U.S.C. § 959, which requires debtors to comply with state and other laws in performance of their duties, does not apply to the Store Closing Sales.    *See, e.g.*, *In re Borne Chemical Co.*, 54 B.R. 126, 135 (Bankr. D.N.J. 1984) (holding that 28 U.S.C. § 959(b) is only applicable when property is being managed or operated for the purpose of continuing operations).    As such, creditors and the public interest are adequately protected by notice of this motion and the ongoing jurisdiction and supervision of the Court.

48.    Further, bankruptcy courts have consistently recognized, with limited exception, that federal bankruptcy law preempts state and local laws that contravene the underlying policies of the Bankruptcy Code.    *See In re Shenango Group, Inc.*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code . . . . [A] state statute . . . cannot place burdens on [a debtor] where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd*, 112 F.3d 633 (3d Cir. 1997).    Courts in some jurisdictions have found that preemption of state law is not appropriate if the laws deal with public health and safety.    *See In re Baker & Drake, Inc.*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (holding that Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in part as public safety measure).    However, preemption is appropriate where, as is the case here, the only state laws involved concern economic regulation rather than the protection of public health and safety.    *See In re Baker & Drake. Inc.*, 35 F.3d at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety"); *In re Quanta Res. Corp.*, 739 F.2d 912, 920 (3d Cir. 1984), *aff'd sub nom. Midlantic Nat.*

37403441.4
4933-8487-4380, v. 2

*Bank* v. *New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986) (finding federal bankruptcy preemption applies to "state law regulating the distribution of assets" but not to "police power regulations").

49.    Under the circumstances of these cases, enforcing the strict requirements of the Applicable Sale Laws would undermine the fundamental purpose of section 363(b) of the Bankruptcy Code by placing constraints on the Debtors' ability to maximize estate assets for the benefit of creditors.    Accordingly, authorizing the Store Closing Sales without the delays and burdens associated with obtaining various state and local licenses, observing state and local waiting periods or time limits, and/or satisfying any additional requirements with respect to advertising and similar items is both necessary and appropriate.    The requested waiver is narrowly tailored to facilitate the successful consummation of Store Closing Sales because the Debtors do not seek a general waiver of all state and local requirements, but only those that apply specifically to retail liquidation sales.    With the exception of the limited waivers and accommodations requested herein, the Debtors will comply with applicable state and local public health and safety laws, and applicable tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising.    Finally, the Dispute Resolution Procedures provide an ordered means for resolving any disputes arising between the Debtors and/or the Consultant and any Governmental Units with respect to the applicability of any Applicable Sale Laws and should therefore be approved.

## VI.    Waiver of Compliance with Any Restriction in the Leases Is Warranted.

50.    Certain of the Debtors' leases governing the premises of the Closing Stores may contain provisions purporting to restrict or prohibit the Debtors from conducting store closing, liquidation, or similar sales.    Such provisions have been held to be unenforceable in chapter 11

33

cases because they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code. *In re R. H. Macy and Co., Inc.*, 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (allowing a retail company's liquidation sale despite a restrictive covenant to the contrary where the sale did not conflict the purpose of the covenant).

51.     Store closing sales are a routine part of chapter 11 cases involving retail debtors. To the extent that such provisions or restrictions exist in any of the leases for the Closing Stores, the Debtors request that the Court authorize the Debtors and/or the Consultant to conduct any sales without reference to any such restrictive provisions or interference by any landlords or other persons affected, directly or indirectly, by the Store Closing Sales.

## VII.    <u>Abandonment of the Burdensome Property is Authorized by Section 554(a) of the Bankruptcy Code</u>.

52.     After notice and a hearing, a debtor "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also Hanover Ins. Co.* v. *Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (stating that a trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim or administering the property"). The Debtors are seeking to sell all FF&E remaining in the Closing Stores. However, the Debtors may determine

34

that the costs associated with holding or selling certain property or FF&E exceeds the proceeds that will be realized upon its sale, or that such property is not sellable at all.   In such event, the property is of inconsequential value and benefit to the estates and may be burdensome to retain.

53.     To maximize the value of the Debtors' assets and to minimize the costs to the estates, the Debtors respectfully request authority to abandon any of their remaining FF&E or other property located at any of the Closing Stores without incurring liability to any person or entity. The Debtors further request that the landlord of each Closing Store with any abandoned FF&E or other property be authorized to dispose of such property without liability to any third parties.

54.     Notwithstanding the foregoing, the Debtors and/or the Consultant will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (referring to information which alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) of any customers or employees in any of the Debtors' hardware, software, computers, or cash registers or similar equipment that are to be sold or abandoned.

**VIII.    <u>The Proposed Modifications to the Debtors' Customer Programs are Appropriate</u>.**

55.     The Debtors have contemporaneously filed their *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Maintain and Administer Their Existing Customer Programs and (B) Honor Certain Prepetition Obligations and (II) Granting Related Relief* (the "<u>Customer Programs Motion</u>").  The Debtors must be able to modify their customer programs during the course of the Store Closing Sales.  The Debtors believe it is appropriate to give all parties with validly issued gift cards the opportunity to utilize their gift cards for the first 30 days following the Sale Commencement Date, thus providing customers with a relatively significant

35

period of time to spend any remaining balances prior to the termination of the gift certificate and

gift card program.  Accordingly, the Debtors propose that providing notice of the policy at all cash

registers will provide adequate notice of the deadline.  Unless the Debtors have entered into an

agreement for a sale of their assets, after the 30-day deadline has passed, the gift certificates and

gift cards will no longer have any value.  The Debtors will post notice of the changes to gift

certificates and gift cards programs on their website and at cash registers in their stores.

56.     Courts authorizing store closing sales often set deadlines for the use of gift cards.

*See, e.g.*, *In re Bed Bath & Beyond Inc*., No. 23-13359 (Bankr. D.N.J. April 25, 2023) (authorizing

the debtors to accept gift cards for up to 14 days after the petition date); *In re David's Bridal, LLC*,

No. 23-13131 (Bankr. D.N.J. April 17, 2023) (authorizing the debtors to accept gift cards for up

to 30 days after the petition date); *In re Stage Stores, Inc., et al*., No. 20-32564 (Bankr. S.D. Tex.

May 13, 2020) (authorizing the debtors to accept gift cards for up to 30 days after stores reopened

following COVID-19); *In re Modell's Sporting Goods Inc., et al.,* No. 20-14179 (VFP) (Bankr.

D.N.J. Mar. 13, 2020) (authorizing the debtors to accept gift cards for up to 90 days after entry of

the store closing sale order); *In re Skin Sense, Inc.*, 2017 WL 474317, at *4 (Bankr. E.D.N.C. Feb.

3, 2017) ("In cases involving liquidating retailers, courts have implemented various approaches to

allow consumers to redeem gift cards and to avoid the claims process, such as setting deadlines by

which a gift card must be redeemed or establishing express conditions for redemption.") (citations

omitted).

57.     Further, given the unknown identities of the gift certificate and gift card holders,

only constructive notice of the deadline to use the gift cards is required.  *See In re BGI, Inc*., 476

B.R. 812, 821–23 (Bankr. S.D.N.Y. 2012) (finding that gift card holders were only entitled to

constructive notice of the claims bar date and stating "gift cards, as their name illustrates, are not

37403441.4
4933-8487-4380, v. 2

intended to be used by the purchaser but are instead intended as gifts, so even if the Debtors were able to identify the purchasers of the gift cards, they would have no way of tracing the ultimate recipients.").

58.     Courts also have authorized restrictions on or the elimination of returns, exchanges, or refunds of good purchased post-petition.  *See, e.g.*, *In re Soft Surroundings Holdings, LLC*, No. 23-90769 (Bankr. S.D. Tex. Sep. 12, 2023) (authorizing the debtors to accept returns for up to 30 days after purchase but prohibiting returns of merchandise sold in store closing sales); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (Bankr. D.N.J. April 25, 2023); *In re David's Bridal, LLC*, No. 23-13131 (Bankr. D.N.J. April 17, 2023) (same); *In re Stage Stores, Inc., et al.*, No. 20-32564 (Bankr. S.D. Tex. May 13, 2020) (authorizing the debtors to accept returns for up to 30 days after stores reopened following COVID-19); I*n re Christopher & Banks Corporation, et al.*, No. 21-10269 (Bankr. D.N.J. Feb. 8, 2021) (approving assumption, on a final basis, of consulting agreement that provided all sales were "as is" and final, with no returns, unless otherwise directed by the Debtor); *In re SLT Holdco, Inc., et al.*, No. 20-18368 (Bankr. D.N.J. July 13, 2020) ("All sales of Merchandise and FF&E sold on or after the Petition Date shall be "as is" and shall be on a final basis with no Merchandise subject to return, exchange, or refund."); *In re Independent Pet Partners Holdings, LLC, et al.*, No. 23-10153 (Bankr. D. Del. Feb. 8, 2023) (same); *In re Francesca's Holding Corporation, et al.*, No. 20-13076 (BLS) (Bankr. D. Del. Dec. 16, 2020) (same); *In re Century 21 Department Store, LLC, et al.*, No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 15, 2020) (same).

## IX.     The Sale Incentive Program Satisfies the Applicable Standards.

59.     The Debtors' implementation of the Sale Incentive Program is proper under section 503 of the Bankruptcy Code, which generally prohibits certain transfers made to officers, managers,

consultants, and others that are both outside the ordinary course of business and not justified by the facts and circumstances of the case. *See* 11 U.S.C. § 503(c)(3). Payments characterized as "incentive plans" have received approval under section 503(c)(3) from courts even where the key employees are officers. *In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 359 (Bankr. E.D. Va. 2016) (approving an incentive-based plan and noting that "every dollar earned under the KEIP is earned based on the financial and operational performance of the Debtors"); *In re Fieldstone Mortg. Co.*, 427 B.R. 357, 363 (Bankr. D. Md. 2010) (distinguishing incentive and retention plans). Because the Sale Incentive Program is designed to incentivize rank-and-file Sales Employees to maximize the Debtors' value while managing the Store Closing Sales, not to induce insiders to stay, this Motion does not implicate section 503(c)(1) of the Bankruptcy Code. *See id*. (holding that incentive pay to senior managers is not governed by the provisions in section 503(c)(1) prohibiting retentive pay to insiders).

60.    Section 503(c)(3) of the Bankruptcy Code provides, in relevant part, that "there shall be neither allowed nor paid . . . other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case…" 11 U.S.C. § 503(c)(3).

61.    A majority of courts agree that the requirement of section 503(c)(3) of the Bankruptcy Code that a transaction be "justified by the facts and circumstances of the case" is the same as the business judgment standard under section 363(b) of the Bankruptcy Code. *See, e.g., Alpha Nat.*, 546 B.R. at 356 (collecting cases applying the business judgment standard to approve an insider compensation program); *In re Dana Corp.*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) ("[S]ection 503(c)(3) gives the court discretion as to bonus and incentive plans, which are not primarily motivated by retention or in the nature of severance."); *In re Glob. Home Prods., LLC*,

369 B.R. 778, 783 (Bankr. D. Del. 2007) ("If [the proposed plans are] intended to incentivize management, the analysis utilizes the more liberal business judgment review under § 363.").

62. Courts have found that a debtor's use of reasonable performance-based payments and other employee incentives is a valid exercise of a debtor's business judgment. *See, e.g., Alpha Nat.*, 546 B.R. at 363 (approving the KEIP as a valid exercise of business judgment); *In re Am. W. Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (noting that it is the proper use of a debtor's business judgment to propose payments for employees who helped propel the debtor successfully through the bankruptcy process). Many courts have approved employee payment programs as valid exercises of business judgment. *See, e.g., In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012) (noting that Bankruptcy Code section 503(c) does not foreclose a chapter 11 debtor from reasonably compensating employees, including 'insiders,' for their contribution to the debtors' reorganization"); *Glob. Home Prods. LLC*, 369 B.R. at 778 (approving management incentive program for benefit of nine employees of the debtors provided that such employees fulfilled their obligations to the debtors through the closing of a sale of substantially all of the Debtors' assets). While predominantly or purely retentive payments to insiders are expressly prohibited by the terms of section 503(c)(1) of the Bankruptcy Code, incentive payments that may have some retentive effect are permissible so long as they motivate senior management "to produce and increase the value of the estate." *Dana Corp.*, 358 B.R. at 571.

63. Here, the Sale Incentive Program amply satisfies these standards. Given the uncertain and demanding circumstances in these Chapter 11 Cases, it is absolutely critical that the Debtors incentivize the Sales Employees to implement the Store Closing Sale process on the contemplated timeline. Without the tireless efforts of the Sales Employees to execute the Store

37403441.4
4933-8487-4380, v. 2

Closing Sales, the Debtors will likely fail to realize significant value that would otherwise be distributable to their stakeholders.

## The Requirements of Bankruptcy Rule 6003(b) are Satisfied

64.    Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the administration of their estates, and the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' efficient administration of their estates at this critical juncture.  The requested relief is necessary for the Debtors to operate their businesses during these chapter 11 cases and maximize the value of their estates for the benefit of all stakeholders.  The Debtors submit that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

65.    The Debtors request that the Court enter an order providing that notice of the relief requested satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

66.    Nothing contained herein is intended or should be construed as: (a) an admission as to the validity or priority of any claim or lien against the Debtor; (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or the proposed Order; (e) a request or authorization to assume

40

any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or

(f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or

any other applicable law.

## **Notice**

67.      The Debtors will provide notice of this Motion to the following parties or their

respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the 30

largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the

prepetition lenders; (d) the Office of the United States Attorney for the District of New Jersey;

(e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal

Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection

Agency; (i) other governmental agencies having a regulatory or statutory interest in these cases;

(j) the Landlords; (k) the Consultant; and (l) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need

be given.

*[Remainder of page left blank intentionally]*

41

The Debtors request that the Court enter the Order granting the relief requested herein and

such other relief as the Court deems appropriate under the circumstances.

Dated:  Roseland, New Jersey
February 5, 2026

MANDELBAUM BARRETT PC

By: */s/ Vincent J. Roldan*
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Jeffrey M. Rosenthal
(N.J. Bar No. 008231982)
jrosenthal@mblawfirm.com
Vincent J. Roldan
(N.J. Bar No. 045371998)
vroldan@mblawfirm.com
Katie F. Warren
(N.J. Bar No. 540842025)
KWarren@mblawfirm.com
*Proposed Counsel for Francesca's Acquisition,*
*LLC, et al.*

**MANDELBAUM BARRETT PC**
3 Becker Farm Road
Suite 105
Roseland, New Jersey 07068
(973) 736-4600
(973) 325-7467 Facsimile
Jeffrey M. Rosenthal, Esq.
jrosenthal@mblawfirm.com
Vincent J. Roldan, Esq.
vroldan@mblawfirm.com
Katie F. Warren
KWarren@mblawfirm.com
*Proposed Counsel to Debtors and Debtors in
Possession*

| | |
|---|---|
| In re:<br><br>FRANCESCA'S ACQUISITION, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-_____ (___)<br><br>Judge:<br><br>(Joint Administration Requested) |

## INTERIM ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

(Related to Docket No. _)

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession

(collectively, the "<u>Debtors</u>") for entry of an interim order (this "<u>Interim Order</u>"), (a) authorizing

the Debtors to assume and perform under the Consulting Agreement, attached hereto as **Exhibit 1**;

(b) authorizing the Debtors to conduct closings or similarly themed sales (collectively, the "<u>Store</u>

<u>Closing Sales</u>") at the locations subject to the Consulting Agreement (collectively, the "<u>Closing</u>

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Francesca's Acquisition, LLC (3616); Francesca's Operations, Inc. (6872); Francesca's Administrative Management, Inc. (5788); and Francesca's IP Company, Inc. (9588). The Debtors' service address is 8760 Clay Road, Suite 100, Houston, TX 77080.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Page (2)
Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                        DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                        CLOSING CONSULTING AGREEMENT, (II) APPROVING
                        PROCEDURES FOR STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

Stores") in accordance with the terms of the Store Closing Procedures attached hereto as **Exhibit 2**,

with any such related sales to be free and clear of all liens, claims and encumbrances (collectively,

the "Encumbrances"); (c) approving modifications to certain customer programs, including the

return policy and acceptance of gift cards, resulting from the Store Closing Sales; (d) authorizing

the sale or disposition of the Store Closing Assets free and clear of Encumbrances; (e) authorizing

the abandonment of certain burdensome Merchandise, FF&E, and personal property; and

(f) granting related interim relief, all as more fully set forth in the Motion; and upon the First Day

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and

this Court having found this is a core proceeding pursuant to 28 U.S.C. § 157(b); that venue of this

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the interim relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under

the circumstances and no other notice need be provided; and this Court having reviewed the

Motion and having heard the statements in support of the interim relief requested therein at a

hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the interim relief

granted herein; and upon all of the proceedings had before this Court; and after due deliberation

and sufficient cause appearing therefor, the Court finds as follows:

37403441.4
4933-8487-4380, v. 2

Page (3)
Debtors:          FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:         26-_____ (_____)
Caption of Order: INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                  DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                  CLOSING CONSULTING AGREEMENT, (II) APPROVING
                  PROCEDURES FOR STORE CLOSING
                  SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                  CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

    A.    The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

    B.    The Debtors have sound business reasons for seeking to continue their conduct of the Store Closing Sales, assume and perform under the Consulting Agreement, and adopt the Store Closing Procedures on an interim basis subject to the Final Hearing (defined below), as set forth in the Motion and at the Hearing, and assumption of the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

    C.    The continued conduct of the Store Closings in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Store Closing Assets.

    D.    The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's-length bargaining positions.

    E.    The Debtors' assumption of the Consulting Agreement is a sound exercise of the Debtors' business judgment.

    F.    The sale of the Closing Stores Assets through the continued conduct of the Store Closing Sales in the Closing Stores is in the best interest of the Debtors' estates.

Page (4)
Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                        DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                        CLOSING CONSULTING AGREEMENT, (II) APPROVING
                        PROCEDURES FOR STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

G.      The Debtors have represented that they are neither selling nor leasing personally

identifiable information pursuant to the Motion, although the Consultant will be authorized to

distribute emails and promotional materials to the Debtors' customers consistent with the Debtors'

existing policies on the use of consumer information.

H.      The interim relief set forth herein is necessary to avoid immediate and irreparable

harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and

sound business purposes and justifications for the interim relief approved herein.

I.      The entry of this Interim Order is in the best interest of the Debtors and their estates,

creditors, and interest holders and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT:**

1.      The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on [●], 2026,

at [●] a/p.m. (prevailing Central Time).  Any objections or responses to entry of a final order on

the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time), on [●], 2026.

2.      The Debtors' implementation and effectuation of the Store Closing Sales is

approved as set forth herein, pursuant to section 105(a) and 363(b) of the Bankruptcy Code.

3.      The Debtors are authorized, pursuant to sections 105(a), 363(b), and 365 of the

Bankruptcy Code and without further notice or interim relief from the Court except as provided

herein, to take any and all actions consistent with this Order that are necessary or appropriate in

the exercise of their reasonable business judgment to implement the Store Closing Sales.

37403441.4
4933-8487-4380, v. 2

Page (5)
Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                    DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                    CLOSING CONSULTING AGREEMENT, (II) APPROVING
                    PROCEDURES FOR STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

4.      The Debtors are authorized and empowered to take any and all further actions as
may be reasonably necessary or appropriate to give effect to this Interim Order.

5.      Notwithstanding the interim relief granted in this Interim Order, any payment made
by the Debtors pursuant to the authority granted herein, or authorizations contained hereunder,
shall be subject to and in compliance with any orders entered by the Court authorizing the Debtors'
use of cash collateral and any budget in connection therewith.   To the extent there is any
inconsistency between such orders and any action taken or proposed to be taken hereunder, the
terms of such orders and budgets shall control, other than as explicitly set forth in paragraph 9 of
this Interim Order.

6.      To the extent of any conflict between this Interim Order, the Store Closing
Procedures, any Side Letter (as defined below), and the Consulting Agreement, the terms of any
Side Letter shall control over this Interim Order, this Interim Order shall control over all other
documents and the Store Closing Procedures shall control over the Consulting Agreement.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice
of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied
by such notice.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim
Order are immediately effective upon its entry.

**I.      Authority to Assume and Perform under the Consulting Agreement.**

Page (6)
Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                    DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                    CLOSING CONSULTING AGREEMENT, (II) APPROVING
                    PROCEDURES FOR STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

9.      The Debtors are authorized to assume and perform under the Consulting Agreement

pursuant to sections 363 and 365 of the Bankruptcy Code, on an interim basis including:

(a) making payments required by the Consulting Agreement to the Consultant without the need for

any application of the Consultant or a further order of the Court,  (b) allowing the sale of Additional

Merchandise, and (c) conducting the Sales, all as permitted under the Consulting Agreement.  The

(a) payment of all obligations to the Consultant under the Consulting Agreement, including but

not limited to all past due, current or future Base Fee, Incentive Fee (if any) and Consultant

Incurred Expense due to Consultant under the Consulting Agreement (collectively, the "Consultant

Payment Obligations") is approved without the need for any application of the Consultant and

without further order of the Court, and (b) all such payments of the Consultant Payment

Obligations shall be made in accordance with the Consulting Agreement, the Budget approved as

part of the Consulting Agreement, and the provisions of this Interim Order.  The Debtors are also

authorized and directed to pay the proceeds from the sale of the Additional Merchandise (net of

the Additional Merchandise Fee) to Consultant as provided below and in the Consulting

Agreement.  The Consultant Payment Obligations shall be paid from the gross proceeds from the

sale of the Debtors' inventory and owned FF&E, without offset, in each case in accordance with

the terms of the Consulting Agreement, without adherence to any weekly, monthly, or aggregate

limitation in any interim or final order approving the use of cash collateral or other financing to

the Debtors (the "Financing Orders"), other order, or any cash collateral or other budget entered

37403441.4
4933-8487-4380, v. 2

Page (7)
Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                    DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                    CLOSING CONSULTING AGREEMENT, (II) APPROVING
                    PROCEDURES FOR STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

in connection with the Debtors chapter 11 case (collectively, as the case may be an "Approved Financing Budget"); provided however, payment of the Consultant Payment Obligations shall be deemed to be in compliance with any Approved Financing Budget and the applicable provisions of the Financing Order; and whether or not included in each such Approved Financing Budget. To the extent there is any conflict or inconsistency between this Interim Order and the Financing Orders, the Consultant's rights under this Interim Order regarding the payment of Consultant Payment Obligations shall be governed by this Interim Order. Additional Agent Merchandise Proceeds received by, or that otherwise come into the possession of, Debtors at any time shall be segregated and held strictly in trust for the benefit of the Consultant, shall not be commingled with the Debtors' own assets, and, as such, shall not become property of the Debtors' estates pursuant to and consistent with 11 U.S.C. § 541(b)(1), and shall be paid over to Consultant promptly, but in any event, not later than in connection with each Weekly Sale Reconciliation (as provided for in Section 4.1 of the Consulting Agreement).

10.    Consultant is hereby granted a first-priority security interest and lien upon (a) the Additional Merchandise and (b) the Additional Merchandise proceeds (other than the Additional Merchandise Fee payable to the Debtors), which security interest shall be deemed perfected on an interim basis pursuant to this Interim Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof

7

Case 26-11312-MEH    Doc 3    Filed 02/05/26    Entered 02/05/26 10:17:51    Desc Main
Document        Page 50 of 96

Page (8)

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | INTERIM ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

under the applicable UCC identifying Consultant's interest in the Additional Merchandise (and any proceeds thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and Consultant's security interest in such Additional Merchandise and Consultant's portion of the Additional Merchandise proceeds). Notwithstanding anything in Paragraph 5 to the contrary, as part of each weekly reconciliation, the Debtors shall turnover all proceeds from the sale of Additional Merchandise to the Consultant, net only of the Additional Merchandise Fee payable to the Debtors pursuant to the Consulting Agreement. For the avoidance of doubt, such turnover proceeds of the Additional Merchandise shall not be considered disbursements for purposes of calculating quarterly fees payable by the Debtors pursuant to 28 U.S.C. § 1930(a)(6).

11.    Subject to the restrictions set forth in this Interim Order and the Store Closing Procedures, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Store Closing Sales; and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Store Closing Sales prior to the date of this Interim Order, hereby are approved and ratified.

12.    No later than five (5) business days prior to the Final Hearing, the Consultant shall file a declaration (the "Consultant Declaration") disclosing its connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases.

37403441.4
4933-8487-4380, v. 2

Page (9)
Debtors:                 FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:                26-_____ (_____)
Caption of Order:   INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                             DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                             CLOSING CONSULTING AGREEMENT, (II) APPROVING
                             PROCEDURES FOR STORE CLOSING
                             SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                             CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

**II.    Authority to Engage in Store Closing Sales.**

13.    The Debtors are authorized, but not directed, on an interim basis pending the Final

Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately

conduct the Store Closing Sales at the Closing Locations in accordance with this Interim Order,

the Store Closing Procedures and the Consulting Agreement.

14.    The Store Closing Procedures are approved in their entirety on an interim basis.

15.    The Debtors are authorized to discontinue operations at the Closing Stores in

accordance with this Interim Order and the Store Closing Procedures.

16.    All entities that are presently in possession of some or all of the Merchandise or

FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement

or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to

the Debtors or the Consultant.  Debtors shall immediately serve a copy of this Interim Order on

any party alleged to be in possession of said Merchandise or FF&E.

17.    Subject to Section IV of this Interim Order, neither the Debtors nor the Consultant

nor any of their officers, employees, or agents shall be required to obtain the approval of any third

party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code

section 101(27)) or landlord, to conduct the Store Closing Sales and to take the related actions

authorized herein.

**III.    Conduct of the Store Closing Sales.**

37403441.4
4933-8487-4380, v. 2

Page (10)
Debtors:                    FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:                   26-_____ (_____)
Caption of Order:           INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                            DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                            CLOSING CONSULTING AGREEMENT, (II) APPROVING
                            PROCEDURES FOR STORE CLOSING
                            SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                            CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

18.     All newspapers and other advertising media in which the Store Closing Sales may

be advertised and all landlords are directed to accept this Interim Order as binding authority so as

to authorize the Debtors and the Consultant to conduct the Store Closing Sales and the sale of

Merchandise and FF&E pursuant to the Consulting Agreement, including, without limitation, to

conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and

in accordance with this Interim Order, the Store Closing Procedures, and the Consulting

Agreement.  Nothing herein shall be construed to require newspapers or other advertising media

to change or modify their normal process for accepting advertising relevant to any Store Closing

Sales.

19.     Subject to the Dispute Resolution Procedures (as defined below) provided for in

this Interim Order and any Side Letter, the Debtors and the Consultant are hereby authorized to

take such actions as may be necessary and appropriate to implement the Consulting Agreement

and to conduct the Store Closing Sales without necessity of further order of this Court as provided

in the Consulting Agreement or the Store Closing Procedures, including, but not limited to,

advertising the sale as a "going out of business," "store closing," "sale on everything," "everything

must go," or other mutually agreed upon themed sales through the posting of signs (including the

use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing

locations to the extent the applicable closing location entrance does not require entry into the

enclosed mall common area), use of sign-walkers and street signage.

37403441.4
4933-8487-4380, v. 2

Page (11)
Debtors:                    FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:                   26-_____ (_____)
Caption of Order:           INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                            DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                            CLOSING CONSULTING AGREEMENT, (II) APPROVING
                            PROCEDURES FOR STORE CLOSING
                            SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                            CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

20.     Notwithstanding anything herein to the contrary, and in view of the importance of
the use of sign-walkers, banners, and other advertising to the sale of the Merchandise and FF&E,
to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding
laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the
Consultant are unable to resolve the matter consensually, any party may request an immediate
telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent
practicable, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within
five business days of such request.  This scheduling shall not be deemed to preclude additional
hearings for the presentation of evidence or arguments as necessary.

21.     Nothing in the Consulting Agreement, the Store Closing Procedures or this Interim
Order releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under
environmental laws or regulations (or any associated liabilities for penalties, damages, cost
recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or
operator of the property after the date of entry of this Interim Order.  Nothing contained in this
Interim Order, the Consulting Agreement, or the Store Closure Procedures shall in any way:
(a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the
obligations of the Debtors to comply with environmental laws consistent with their rights and
obligations as debtors in possession under the Bankruptcy Code, and the Debtors reserve all rights
related thereto.

37403441.4
4933-8487-4380, v. 2

Page (12)
Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                        DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                        CLOSING CONSULTING AGREEMENT, (II) APPROVING
                        PROCEDURES FOR STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

22.     Except as expressly provided in the Consulting Agreement, the sale of the
Merchandise and FF&E shall be conducted by the Debtors and the Consultant notwithstanding any
restrictive provision of any lease, sublease, or other agreement relative to occupancy affecting or
purporting to restrict the conduct of the Store Closing Sales, the rejection of leases, abandonment
of assets, or "going dark" provisions.  The Debtors, the Consultant, and landlords of the closing
locations are authorized to enter into agreements ("Side Letters") between themselves modifying
the Store Closing Procedures without further order of the Court, and such Side Letters shall be
binding as among the Debtors, the Consultant, and any such landlords.  In the event of any conflict
between the Store Closing Procedures and any Side Letter, the terms of such Side Letter shall
control.

23.     Except as expressly provided for herein or in the Store Closing Procedures, no
person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or
creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder
consummation of the Store Closing Sales, or the advertising and promotion (including the posting
of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and
persons of every nature and description, including, but not limited to, any landlord, licensor,
service providers, utilities, or creditor and all those acting for or on behalf of such parties, are
prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding,
the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court

37403441.4
4933-8487-4380, v. 2

Page (13)
Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                        DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                        CLOSING CONSULTING AGREEMENT, (II) APPROVING
                        PROCEDURES FOR STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

(other than in the Court) or administrative body seeking an order or judgment against, among

others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way

directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the sale

or other liquidation sales at the closing locations and/or seek to recover damages for breach(es) of

covenants or provisions in any lease, sublease, license, or contract based upon any interim relief

authorized herein.

24.    All sales of Store Closing Assets shall be "as is" and final.  However, as to the

Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be

complied with and are not superseded by the sale of said goods or the use of the terms "as is" or

"final sales."  As to the Closing Stores, all state and federal laws relating to implied warranties for

latent defects shall be complied with and are not superseded by the sale of said goods or the use of

the terms "as is" or "final sale."

25.    The Consultant shall not be liable for sales taxes except as expressly provided in

the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the

Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sales to the

applicable Governmental Units as and when due, provided that in the case of a bona fide dispute

the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the

extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance

of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor

Page (14)
Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (_____)
Caption of Order:     INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                      DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                      CLOSING CONSULTING AGREEMENT, (II) APPROVING
                      PROCEDURES FOR STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

or any other party, other than the applicable Governmental Unit for which the sales taxes are

collected.  The Consultant shall collect, remit to the Debtors and account for sales taxes as and to

the extent provided in the Consulting Agreement.  This Interim Order does not enjoin, suspend, or

restrain the assessment, levy or collection of any tax under state law, and does not constitute a

declaratory judgment with respect to any party's liability for taxes under state law.

26.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the

Debtors, is authorized to sell, and all sales of Store Closing Assets, whether by the Consultant or

the Debtors, shall be, free and clear of any and all of any liens, claims, encumbrances, and other

interests; *provided*, *however*, that any such liens, claims, encumbrances, and other interests shall

attach to the proceeds of the sale of the Store Closing Assets with the same validity, in the amount,

with the same priority as, and to the same extent that any such liens, claims, and encumbrances

have with respect to the Store Closing Assets, subject to any claims and defenses that the Debtors

may possess with respect thereto and the Consultant's fees and expenses (as provided in the

Consulting Agreement).

27.     Neither the Store Closing Procedures, Consulting Agreement, nor this Interim

Order authorize the Debtors to transfer or sell to Consultant or any other party the personal

identifying information (which means information which alone or in conjunction with other

information identifies an individual, including but not limited to an individual's first name (or

initial) and last name, physical address, electronic address, telephone number, social security

Page (15)
Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:            26-_____ (_____)
Caption of Order:    INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                     DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                     CLOSING CONSULTING AGREEMENT, (II) APPROVING
                     PROCEDURES FOR STORE CLOSING
                     SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                     CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

number, date of birth, government-issued identification number, account number and credit or

debit card number ("PII") of any customers or employees unless such sale or transfer is permitted

by the Debtors' privacy policy and state, provincial or federal privacy and/or identity theft

prevention laws and rules (collectively, the "Applicable Privacy Laws").  The foregoing shall not

limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the

Consulting Agreement solely for purposes of advertising and promoting the Store Closing Sales.

To the extent that the Debtors propose to sell or abandon FF&E which may contain PII or

confidential information about the Debtors' employees and/or customers, the Debtors shall remove

the PII from such items of FF&E before such sale or abandonment.  At the conclusion of the Store

Closing Sales, the Consultant shall provide the Debtors with written verification that the

Consultant has not removed, copied, or sold any customer PII and that any records containing PII

were shredded, erased or otherwise modified to render the PII unreadable or undecipherable prior

to any sales.  Debtors shall prepare and file a declaration of compliance within 30 days from the

conclusion of each sale which reflects if any sale or abandonment of FF&E containing PII has

taken place and that removal of the PII has occurred.

28.    The Debtors and/or the Consultant (as the case may be) are authorized and

empowered to transfer Store Closing Assets among the Closing Stores.  The Consultant is

authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in

accordance with the terms of the Consulting Agreement, provided that, to the extent prohibited by

Page (16)
Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                        DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                        CLOSING CONSULTING AGREEMENT, (II) APPROVING
                        PROCEDURES FOR STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

applicable law, the Consultant and Debtors are not authorized to abandon, and the Debtors are

directed to remove and properly dispose of, any hazardous materials defined under applicable law

of the jurisdiction in which the materials are located from any leased premises as and to the extent

required by applicable law of the jurisdiction in which the lease premises lies.

29.     Notwithstanding this or any other provision of this Interim Order, nothing shall

prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or

otherwise) or any of its affiliates from bidding on any Debtors' assets not subject to the Consulting

Agreement ("Additional Assets").  The Consultant is hereby authorized to bid on and guarantee or

otherwise acquire such Additional Assets notwithstanding anything to the contrary in the

Bankruptcy Code or other applicable law, *provided* that any such guarantee, transaction or

acquisition is approved by separate order of this Court.

**IV.    Dispute Resolution Procedures with Governmental Units.**

30.     Nothing in this Interim Order, the Consulting Agreement, or the Store Closing

Procedures, releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit

under environmental laws or regulations (or any associated liabilities for penalties, damages, cost

recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or

operator of the property after the date of entry of this Interim Order.  Nothing contained in this

Interim Order, the Consulting Agreement, or the Store Closing Procedures shall in any way

(a) diminish the obligation of any entity to comply with environmental laws or (b) diminish the

Page (17)
Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                        DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                        CLOSING CONSULTING AGREEMENT, (II) APPROVING
                        PROCEDURES FOR STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

obligations of the Debtors to comply with environmental laws consistent with its rights and

obligations as debtor in possession under the Bankruptcy Code.  The Store Closing Sales shall not

be exempt from laws of general applicability, including, without limitation, public health and

safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and

consumer protection laws, including local laws, regulations, ordinances, or police powers of

general applicability regarding matters such as regulating deceptive practices and false advertising

(collectively, "General Laws").  Nothing in this Interim Order, the Consulting Agreement or the

Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal

safety laws and regulations.   Nothing in this Interim Order shall be deemed to bar any

Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from

enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to

assert in that forum or before this Court that any such laws are not in fact General Laws or that

such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise,

pursuant to paragraph 29 herein.  Notwithstanding any other provision in this Interim Order, no

party waives any rights to argue any position with respect to whether the conduct was in

compliance with this Interim Order and/or any applicable law, or that enforcement of such

applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim Order shall be

deemed to have made any rulings on any such issues.

37403441.4
4933-8487-4380, v. 2

Page (18)

Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (_____)
Caption of Order:     INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                      DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                      CLOSING CONSULTING AGREEMENT, (II) APPROVING
                      PROCEDURES FOR STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

31.     To the extent that the sale of Store Closing Assets is subject to Applicable Sale Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closing Assets, or any similar laws, the dispute resolution procedures in this section shall apply:

a.  *Provided* that the Store Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Applicable Sale Laws and, subject to Paragraph 28 hereof, are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order and the Store Closing Procedures without the necessity of further showing compliance with any Applicable Sale Laws.

b.  Within two business days after entry of this Interim Order, the Debtor shall serve copies of this Interim Order, the Consulting Agreement and the Store Closing Procedures via email, facsimile, or regular mail, on the following: (i) the United States Trustee; (ii) the state attorney general's office for each state where the Store Closing Sales are being held; (iii) the county consumer protection agency or similar agency for each county where the Store Closing Sales will be held; (iv) the division of consumer protection for each state where the Store Closing Sales will be held; (v) the chief legal counsel for the local jurisdiction; and (vi) the landlords for the stores.

Page (19)
Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (_____)
Caption of Order:     INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                      DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                      CLOSING CONSULTING AGREEMENT, (II) APPROVING
                      PROCEDURES FOR STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

    c. To the extent there is a dispute arising from or relating to the Store Closing Sales, this Interim Order, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Applicable Sale Laws (a "Reserved Dispute"), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of this Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (which may be by e-mail) to counsel for the Debtors so as to ensure delivery thereof within one business day thereafter. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

    d. In the event a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the Debtors, a landlord, or other interested party from asserting (i) that the provisions of any Applicable Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Interim Order nor the conduct of the Debtors pursuant to this Interim Order, violates such Applicable Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order, absent further order of this Court. This Court grants authority for the Debtors and the Consultant to conduct the Store Closing Sales pursuant to the terms of this Interim Order, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Applicable Sale Laws or the lack of any preemption of such Applicable Sale Laws by the Bankruptcy Code. Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

    e. If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is an Applicable Sale Law, and subject to any provisions contained in this Interim Order related to the Applicable Sale Laws, then any party to that dispute may utilize the provisions hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is an Applicable Sale Law shall be made *de novo*.

Page (20)
Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (_____)
Caption of Order:     INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                      DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                      CLOSING CONSULTING AGREEMENT, (II) APPROVING
                      PROCEDURES FOR STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

32.     Except as expressly provided for herein or in the Store Closing Procedures, and

except with respect to any Governmental Unit (as to which paragraphs 28 and 29 shall apply), no

person or entity, including, but not limited to, any landlord, licensor, or creditor, shall take any

action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the

Store Closing Sales, or the advertising and promotion (including the posting of signs or the use of

sign walkers) of the Store Closing Sales, and all such parties and persons of every nature and

description, including landlords, licensors, creditors and utility companies and all those acting for

or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or

otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or

proceeding in any court or administrative body seeking an order or judgment against, among others,

the Debtors, the Consultant, or the landlords at the stores that might in any way directly or

indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing

Sales and/or seek to recover damages for breach(es) of covenants or provisions in any lease,

sublease or license based upon any relief authorized herein.

33.     Any restrictions in any lease agreement, restrictive covenant, or similar documents

purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales

shall not be enforceable, nor shall any breach of such provisions in these Chapter 11 Cases

constitute a default under a lease or provide a basis to terminate the lease; provided, that the Store

Page (21)
Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                        DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                        CLOSING CONSULTING AGREEMENT, (II) APPROVING
                        PROCEDURES FOR STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

Closing Sales are conducted in accordance with the terms of this Interim Order and the Store

Closing Procedures.

34.     Subject to Paragraphs 28 and 29 above, each and every federal, state, or local

agency, departmental or governmental unit with regulatory authority over the Store Closing Sales

and all newspapers and other advertising media in which the Store Closing Sales are advertised

shall consider this Interim Order as binding authority that no further approval, license, or permit

of any governmental unit shall be required, nor shall the Debtors be required to post any bond, to

conduct the Store Closing Sales.

35.     Provided that the Store Closing Sales are conducted in accordance with the terms

of this Interim Order, the Consulting Agreement, and the Store Closing Procedures, and in light of

the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and

the Consultant shall be presumed to be in compliance with any Applicable Sale Laws and are

authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order

and the Store Closing Procedures without the necessity of further showing compliance with any

such Applicable Sale Laws.

36.     To the extent that between the Petition Date and the date of the Final Hearing there

is Reserved Dispute, the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute

which such Reserved Dispute will be heard at the Final Hearing, absent a party obtaining expedited

relief.  Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised

Page (22)
Debtors:          FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:         26-_____ (_____)
Caption of Order: INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                  DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                  CLOSING CONSULTING AGREEMENT, (II) APPROVING
                  PROCEDURES FOR STORE CLOSING
                  SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                  CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

with respect to a Reserved Dispute.  Any Governmental Unit may assert a Reserved Dispute by

sending a written notice (which may be by e-mail) explaining the nature of the dispute to: (a) the

Debtors, Attn: Curt Kroll, Chief Restructuring Officer (ckroll@scpllc.com); (b) proposed co-

counsel to the Debtors, Mandelbaum Barrett PC Attn: Vincent J. Roldan

(vroldan@mblawfirm.com); (d) the Office of the U.S. Trustee for the District of New Jersey, Attn:

Fran B. Steele, Esq. (Fran.B.Steele@usdoj.gov)] (e) counsel to any statutory committee appointed

in these Chapter 11 Cases; (g) counsel to the Consultant, counsel to the Consultant, Ellenoff

Grossman & Schole LLP, Attn:  Maura I. Russell (mrussell@egsllp.com); and (g) any affected

landlord and their counsel of record (if known).

## V.    Consumer Provisions.

37.    For the first 30 days following the Sale Commencement Date, such store will

continue to accept the Debtors' validly-issued gift certificates and gift cards issued prior to the

Store Closing Sales for in-person (and only in person) purchases in the ordinary course of business.

After the expiration of the 30 days to utilize gift certificates and gift cards in-store, all such validly-

issued gift certificates and gift cards will no longer be accepted by the Debtors and deemed to have

no remaining value.  Notwithstanding any policy or state law to the contrary, the gift cards are not

redeemable for cash at any time.

38.    The Debtors and the Consultant shall post conspicuous signs in their stores,

including at their cash registers, explaining the above "consumer provisions" to customers,

Page (23)
Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                    DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                    CLOSING CONSULTING AGREEMENT, (II) APPROVING
                    PROCEDURES FOR STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

including the return policies and gift card policy, which shall remain posted throughout the

duration of the Store Closing Sales.  In addition, the Debtors will post notice of the changes to gift

cards and customer programs on the Debtors' website.

**VI.    Other Provisions.**

39.    The Debtors are authorized to continue and honor obligations related to the Sale

Incentive Program; *provided*, *however*, that such authority shall not extend to any Insider without

further order of this Court.

40.    The Consultant shall not be liable for any claims against the Debtors, and the

Debtors shall not be liable for any claims against the Consultant, in each case, other than as

expressly provided for in the Consulting Agreement.

41.    The Debtors shall on a confidential basis provide to the Committee (which can be

by email through counsel) copies of periodic reports and information regarding the conduct of the

Store Closing Sales that are prepared by the Debtors, their professionals, and/or the Consultant

and that are consistent with practices that were in place prepetition.

42.    The Debtors shall have no obligation to indemnify Consultant or provide

contribution or reimbursement to Consultant for any claim or expense arising under the Store

Closing Procedures or Consulting Agreement that is either: (i) judicially determined (the

determination having become final) to have arisen from Consultant's gross negligence, willful

Page (24)
Debtors:                    FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:                   26-_____ (_____)
Caption of Order:    INTERIM ORDER (I) APPROVING AND AUTHORIZING THE
                             DEBTORS TO ASSUME AND PERFORM UNDER THE STORE
                             CLOSING CONSULTING AGREEMENT, (II) APPROVING
                             PROCEDURES FOR STORE CLOSING
                             SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                             CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

misconduct, fraud, breach of fiduciary duty (if any) or bad faith or (ii) settled prior to a judicial

determination as to Consultant's gross negligence, willful misconduct, fraud, breach of fiduciary

duty (if any), or bad faith, but determined by this Court, after notice and a hearing to be a claim or

expense for which the Consultant should not receive indemnity, contribution or reimbursement

pursuant to the Store Closing Procedures or Consulting Agreement.

43.    This Court shall retain exclusive jurisdiction with regard to all issues or disputes

relating to this Interim Order or the Consulting Agreement, including, but not limited to, (a) any

claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit

banner and sign-walker advertising, including with respect to any allegations that such advertising

is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the

Debtors, the landlords and/or the Consultant for protection from interference with the Store

Closing Sales, (c) any other disputes related to the Store Closing Sales, and (d) to protect the

Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other

interests.  No such parties or person shall take any action against the Debtors, the Consultant, the

landlords or the Store Closing Sales until this Court has resolved such dispute.  This Court shall

hear the request of such parties or persons with respect to any such disputes on an expedited basis,

as may be appropriate under the circumstances.

Dated: _____, 2026        _____
                                                           [              ]
                                                           UNITED STATES BANKRUPTCY JUDGE

Page (25)

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | INTERIM ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

37403441.4
4933-8487-4380, v. 2

## **Exhibit 1**

**Consulting Agreement**

**<u>Exhibit 2</u>**

**Store Closing Procedures**

## Store Closing Procedures[1]

1.      The Store Closing Sales will be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

2.      The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Company had been operating such Store on a Sunday.

3.      On "shopping center" property, Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or unless distribution is customary in the "shopping center" in which such Store is located; provided, however, that Consultant may solicit customers in the Stores themselves. On "shopping center" property, Consultant shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.      At the conclusion of the Sale, Consultant shall vacate the Stores in broom clean condition subject to the right to abandon unsold FF&E, and shall leave the Stores in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, provided, however, that the Company and Consultant hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Store.

5.      Consultant shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sale; provided however that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. Consultant may advertise the Sale as a "going out of business", "store closing", "everything must go", "sale on everything", or similar themed sale. Consultant shall not use neon or day-glo on its display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines or pursuant to the terms of the applicable lease with respect to a Store. Nothing contained herein shall be construed to create or impose upon Consultant any additional restrictions not contained in the applicable lease agreement. In addition, Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store and shall not be wider than the storefront of the Store. In addition, Consultant shall be permitted to utilize sign walkers in a safe and professional manner.

---

[1] Capitalized terms used but not defined in these Store Closing Procedures have the meanings given to them in the f Order to which these Store Closing Procedures are attached as **Exhibit 2**, or the Motion to which the Interim Order is attached, as applicable.

6.    Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

7.    Except with respect to the hanging of exterior banners, Consultant shall not make any alterations to the storefront or exterior walls of any Stores.

8.    Consultant shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Store.

9.    Consultant shall keep Store premises and surrounding areas clear and orderly consistent with present practices.

10.    Consultant shall have the right to sell all furniture, fixtures, and equipment located at the Stores (the "FF&E").  Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines at the Stores.  The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through the back-shipping areas at any time, or through other areas after store business hours.

11.    If and to the extent that the landlord of any Closing Store contends that the Debtors or the Consultant are in breach of or default under these Store Closing Procedures, such landlord shall provide at least five (5) days' written notice, served by email or overnight delivery, of:

**If to the Debtors:**

Francesca's Acquisition, LLC
8760 Clay Road, Ste. 100
Houston, TX 77080
Attn:  Curt Kroll, Chief Restructuring Officer
Email: ckroll@scpllc.com

with copies to:

Mandelbaum Barrett PC
3 Becker Farm Road
Roseland NJ 07068
Attn: Vincent J. Roldan
Email: vroldan@mblawfirm.com

**If to the Consultant:**

TIGER CAPITAL GROUP, LLC
60 State Street
Boston, MA  02109
Attn:  Mark Naughton

37403441.4
4933-8487-4380, v. 2

Email: mnaughton@tigergroup.com

SB360 CAPITAL PARTNERS, LLC
75 Second Avenue – Suite 504
Neeham, MA 02494
Attn: Siegfried Schaffer
        Robert Raskin
Email: Zschaffer@SB360.com
        rraskin@sb360.com

GA Group
2829 Townsgate Road, Suite 103
Westlake Village, CA 91361
Attn:   Rebecca W. Hollander
Email: rhollander@gagroup.com

with copies to:

ELLENOFF GROSSMAN & SCHOLE LLP
1345 Avenue of the Americas – 11th Floor
New York, NY 10105
Attn:   Maura I. Russell
Email: mrussell@egsllp.com


If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.

37403441.4
4933-8487-4380, v. 2

**MANDELBAUM BARRETT PC**
3 Becker Farm Road
Suite 105
Roseland, New Jersey 07068
(973) 736-4600
(973) 325-7467 Facsimile
Jeffrey M. Rosenthal, Esq.
jrosenthal@mblawfirm.com
Vincent J. Roldan, Esq.
vroldan@mblawfirm.com
Katie F. Warren
KWarren@mblawfirm.com
*Proposed Counsel to Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>FRANCESCA'S ACQUISITION, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-_____ (___)<br><br>Judge:<br><br>(Joint Administration Requested) |

**FINAL ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF**
(Related to Docket No. _)

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession

(collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Final Order</u>"), (a) authorizing the Debtors

to assume and perform under the Consulting Agreement, attached hereto as **Exhibit 1**;

(b) authorizing the Debtors to conduct closings or similarly themed sales (the "<u>Store Closing</u>

---

[1]   The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Francesca's Acquisition, LLC (3616); Francesca's Operations, Inc. (6872); Francesca's Administrative Management, Inc. (5788); and Francesca's IP Company, Inc. (9588). The Debtors' service address is 8760 Clay Road, Suite 100, Houston, TX 77080.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Page (2)

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

Sales") at the locations subject to the Consulting Agreement (the "Closing Stores") in accordance with the terms of the Store Closing Procedures attached hereto as **Exhibit 2**, with any such related sales to be free and clear of all liens, claims and encumbrances (collectively, the "Encumbrances"); (c) approving modifications to certain customer programs, including the acceptance of gift cards, resulting from the Store Closing Sales; (d) authorizing the sale or disposition of the Store Closing Assets free and clear of Encumbrances; (e) authorizing the abandonment of certain burdensome Merchandise, FF&E, and personal property; and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found this is a core proceeding pursuant to 28 U.S.C. § 157(b); that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having entered its *Interim Order (I) Approving And Authorizing The Debtors To Assume And Perform Under The Store Closing Consulting Agreement, (II) Approving Procedures For Store Closing Sales, (III) Approving Modifications To Certain Customer Programs, And (IV) Granting Related Relief* [Docket No. __] (the "Interim Order") and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined

Page (3)
Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                    ASSUME AND PERFORM UNDER THE STORE CLOSING
                    CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                    STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for

the relief granted herein; and upon all of the proceedings had before this Court; and after due

deliberation and sufficient cause appearing therefor, the Court finds as follows:

    A.    The findings and conclusions set forth in this Order constitute the Court's findings

of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of

fact constitute conclusions of law, they are adopted as such.  To the extent any of the following

conclusions of law constitute findings of fact, they are adopted as such.

    B.    The Debtors have sound business reasons for seeking to continue their conduct of

the Store Closing Sales, assume and perform under the Consulting Agreement, and adopt the Store

Closing Procedures on final basis, as set forth in the Motion and at the Hearing, and assumption

of the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the

best interests of the Debtors and their estates.

    C.    The continued conduct of the Store Closings in accordance with the Store Closing

Procedures will provide an efficient means for the Debtors to dispose of the Store Closing Assets.

    D.    The Consulting Agreement was negotiated, proposed, and entered into by the

Consultant and the Debtors without collusion, in good faith, and from arm's-length bargaining

positions.

    E.    The Debtors' assumption of the Consulting Agreement is a sound exercise of the

Debtors' business judgment.

3

37403441.4
4933-8487-4380, v. 2

Page (4)
Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (_____)
Caption of Order:     ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                      ASSUME AND PERFORM UNDER THE STORE CLOSING
                      CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                      STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

F.      The sale of the Closing Stores Assets through the continued conduct of the Store

Closing Sales in the Closing Stores is in the best interest of the Debtors' estates.

G.      The Debtors have represented that they are neither selling nor leasing personally

identifiable information pursuant to the Motion, although the Consultant will be authorized to

distribute emails and promotional materials to the Debtors' customers consistent with the Debtors'

existing policies on the use of consumer information.

H.      The relief set forth herein is necessary to avoid immediate and irreparable harm to

the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound

business purposes and justifications for the relief approved herein.

I.      The entry of this Final Order is in the best interest of the Debtors and their estates,

creditors, and interest holders and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT:**

1.      The Debtors' implementation and effectuation of the Store Closing Sales is

approved as set forth herein, pursuant to section 105(a) and 363(b) of the Bankruptcy Code.

2.      The Debtors are authorized, pursuant to sections 105(a), 363(b), and 365 of the

Bankruptcy Code and without further notice or relief from the Court except as provided herein, to

take any and all actions consistent with this Order that are necessary or appropriate in the exercise

of their reasonable business judgment to implement the Store Closing Sales.

3.      The Debtors are authorized and empowered to take any and all further actions as

may be reasonably necessary or appropriate to give effect to this Final Order.

4

Page (5)

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

4.      Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein, or authorizations contained hereunder, shall be subject to and in compliance with any orders entered by the Court authorizing the Debtors' use of cash collateral and any budget in connection therewith. To the extent there is any inconsistency between such orders and any action taken or proposed to be taken hereunder, the terms of such orders and budgets shall control, other than as explicitly set forth in paragraph 9 of this Final Order.

5.      To the extent of any conflict between this Final Order, the Store Closing Procedures, any Side Letter (as defined below), and the Consulting Agreement, the terms of any Side Letter shall control over this Final Order, this Final Order shall control over all other documents and the Store Closing Procedures shall control over the Consulting Agreement.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective upon its entry.

I.      **Authority to Assume and Perform under the Consulting Agreement.**

8.      The Debtors are authorized to assume and perform under the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, on a final basis including:  (a) making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court,  (b) allowing the sale of Additional

37403441.4
4933-8487-4380, v. 2

Debtors:                    FRANCESCA'S ACQUISITIONS, LLC, et al.

Case No.:                   26-_____ (_____)

Caption of Order:          ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                           ASSUME AND PERFORM UNDER THE STORE CLOSING
                           CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                           STORE CLOSING
                           SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                           CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

Merchandise, and (c) conducting the Sales, all as permitted under the Consulting Agreement. The (a) payment of all obligations to the Consultant under the Consulting Agreement, including but not limited to all past due, current or future Base Fee, Incentive Fee (if any) and Consultant Incurred Expense due to Consultant under the Consulting Agreement (collectively, the "Consultant Payment Obligations") is approved without the need for any application of the Consultant and without further order of the Court, and (b) all such payments of the Consultant Payment Obligations shall be made in accordance with the Consulting Agreement, the Budget approved as part of the Consulting Agreement, and the provisions of this Final Order. The Debtors are also authorized and directed to pay the proceeds from the sale of the Additional Merchandise (net of the Additional Merchandise Fee) to Consultant as provided below and in the Consulting Agreement. The Consultant Payment Obligations shall be paid from the gross proceeds from the sale of the Debtors' inventory and owned FF&E, without offset, in each case in accordance with the terms of the Consulting Agreement, without adherence to any weekly, monthly, or aggregate limitation in any interim or final order approving the use of cash collateral or other financing to the Debtors (the "Financing Orders"), other order, or any cash collateral or other budget entered in connection with the Debtors chapter 11 case (collectively, as the case may be an "Approved Financing Budget"); provided however, payment of the Consultant Payment Obligations shall be deemed to be in compliance with any Approved Financing Budget and the applicable provisions of the Financing Order; and whether or not included in each such Approved Financing Budget. To the extent there is any conflict or inconsistency between this Final Order and the Financing Orders,

37403441.4
4933-8487-4380, v. 2

Page (7)
Debtors:               FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:              26-_____ (_____)
Caption of Order:      ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                       ASSUME AND PERFORM UNDER THE STORE CLOSING
                       CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                       STORE CLOSING
                       SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                       CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

the Consultant's rights under this Final Order regarding the payment of Consultant Payment

Obligations shall be governed by this Final Order. Additional Agent Merchandise Proceeds

received by, or that otherwise come into the possession of, Debtors at any time shall be segregated

and held strictly in trust for the benefit of the Consultant, shall not be commingled with the Debtors'

own assets, and, as such, shall not become property of the Debtors' estates pursuant to and

consistent with 11 U.S.C. § 541(b)(1), and shall be paid over to Consultant promptly, but in any

event, not later than in connection with each Weekly Sale Reconciliation (as provided for in

Section 4.1 of the Consulting Agreement).

9.      Consultant is hereby granted a first-priority security interest and lien upon (i) the

Additional Merchandise and (ii) the Additional Merchandise proceeds (other than the Additional

Merchandise Fee payable to the Debtors), which security interest shall be deemed perfected on a

final basis pursuant to this Final Order without the requirement of filing UCC financing statements

or providing notifications to any prior secured parties (provided that Consultant is hereby

authorized to deliver any notices and file any financing statements and amendments thereof under

the applicable UCC identifying Consultant's interest in the Additional Merchandise (and any

proceeds thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and

Consultant's security interest in such Additional Merchandise and Consultant's portion of the

Additional Merchandise proceeds). Notwithstanding anything in Paragraph 5 to the contrary, as

part of each weekly reconciliation, the Debtors shall turnover all proceeds from the sale of

Additional Merchandise to the Consultant, net only of the Additional Merchandise Fee payable to

Debtors:                  FRANCESCA'S ACQUISITIONS, LLC, et al.

Case No.:              26-_____ (_____)

Caption of Order:    ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

the Debtors pursuant to the Consulting Agreement.  For the avoidance of doubt, such turnover proceeds of the Additional Merchandise shall not be considered disbursements for purposes of calculating quarterly fees payable by the Debtors pursuant to 28 U.S.C. § 1930(a)(6).

10.      Subject to the restrictions set forth in this Final Order and the Store Closing Procedures, the Debtors and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Store Closing Sales; and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Store Closing Sales prior to the date of this Final Order, hereby are approved and ratified.

## II.    Authority to Engage in Store Closing Sales.

11.      The Debtors are authorized, on a final basis, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue to conduct the Store Closing Sales at the Closing Locations in accordance with this Final Order, the Store Closing Procedures and the Consulting Agreement.

12.      The Store Closing Procedures are approved in their entirety on a final basis.

13.      The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Store Closing Procedures.

14.      All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement

Page (9)
Debtors:         FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:        26-_____ (_____)
Caption of Order:   ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                 ASSUME AND PERFORM UNDER THE STORE CLOSING
                 CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                 STORE CLOSING
                 SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                 CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to

the Debtors or the Consultant.  Debtors shall immediately serve a copy of this Final Order on any

party alleged to be in possession of said Merchandise or FF&E.

15.     Subject to Section IV of this Final Order, neither the Debtors nor the Consultant

nor any of their officers, employees, or agents shall be required to obtain the approval of any third

party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code

section 101(27)) or landlord, to conduct the Store Closing Sales and to take the related actions

authorized herein.

**III.    Conduct of the Store Closing Sales.**

16.     All newspapers and other advertising media in which the Store Closing Sales may

be advertised and all landlords are directed to accept this Final Order as binding authority so as to

authorize the Debtors and the Consultant to conduct the Store Closing Sales and the sale of

Merchandise and FF&E pursuant to the Consulting Agreement, including, without limitation, to

conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and

in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreement.

Nothing herein shall be construed to require newspapers or other advertising media to change or

modify their normal process for accepting advertising relevant to any Store Closing Sales.

17.     Subject to the Dispute Resolution Procedures (as defined below) provided for in

this Final Order and any Side Letter, the Debtors and the Consultant are hereby authorized to take

such actions as may be necessary and appropriate to implement the Consulting Agreement and to

37403441.4
4933-8487-4380, v. 2

Debtors:                FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:               26-_____ (_____)
Caption of Order:       ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                        ASSUME AND PERFORM UNDER THE STORE CLOSING
                        CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                        STORE CLOSING
                        SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                        CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

conduct the Store Closing Sales without necessity of further order of this Court as provided in the

Consulting Agreement or the Store Closing Procedures, including, but not limited to, advertising

the sale as a "going out of business", "store closing," "sale on everything," "everything must go,"

or other mutually agreed upon themed sales through the posting of signs (including the use of

exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to

the extent the applicable closing location entrance does not require entry into the enclosed mall

common area), use of sign-walkers and street signage.

18.     Notwithstanding anything herein to the contrary, and in view of the importance of

the use of sign-walkers, banners, and other advertising to the sale of the Merchandise and FF&E,

to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding

laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the

Consultant are unable to resolve the matter consensually, any party may request an immediate

telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent

practicable, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within

five business days of such request.  This scheduling shall not be deemed to preclude additional

hearings for the presentation of evidence or arguments as necessary.

19.     Nothing in the Consulting Agreement, the Store Closing Procedures or this Final

Order releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under

environmental laws or regulations (or any associated liabilities for penalties, damages, cost

recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or

Page (11)
Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                    ASSUME AND PERFORM UNDER THE STORE CLOSING
                    CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                    STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

operator of the property after the date of entry of this Final Order.  Nothing contained in this Final

Order, the Consulting Agreement, or the Store Closure Procedures shall in any way: (a) diminish

the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of

the Debtors to comply with environmental laws consistent with their rights and obligations as

debtors in possession under the Bankruptcy Code, and the Debtors reserve all rights related thereto.

20.      Except as expressly provided in the Consulting Agreement, the sale of the

Merchandise and FF&E shall be conducted by the Debtors and the Consultant notwithstanding any

restrictive provision of any lease, sublease, or other agreement relative to occupancy affecting or

purporting to restrict the conduct of the Store Closing Sales, the rejection of leases, abandonment

of assets, or "going dark" provisions.  The Debtors, the Consultant, and landlords of the closing

locations are authorized to enter into agreements ("Side Letters") between themselves modifying

the Store Closing Procedures without further order of the Court, and such Side Letters shall be

binding as among the Debtors, the Consultant, and any such landlords.  In the event of any conflict

between the Store Closing Procedures and any Side Letter, the terms of such Side Letter shall

control.

21.      Except as expressly provided for herein or in the Store Closing Procedures, no

person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or

creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder

consummation of the Store Closing Sales, or the advertising and promotion (including the posting

of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and

37403441.4
4933-8487-4380, v. 2

Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                    ASSUME AND PERFORM UNDER THE STORE CLOSING
                    CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                    STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

persons of every nature and description, including, but not limited to, any landlord, licensor,

service providers, utilities, or creditor and all those acting for or on behalf of such parties, are

prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding,

the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court

(other than in the Court) or administrative body seeking an order or judgment against, among

others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way

directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the sale

or other liquidation sales at the closing locations and/or seek to recover damages for breach(es) of

covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized

herein.

22.     All sales of Store Closing Assets shall be "as is" and final.  However, as to the

Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be

complied with and are not superseded by the sale of said goods or the use of the terms "as is" or

"final sales."  As to the Closing Stores, all state and federal laws relating to implied warranties for

latent defects shall be complied with and are not superseded by the sale of said goods or the use of

the terms "as is" or "final sale."

23.     The Consultant shall accept return of any goods that contain a defect which the lay

consumer could not reasonably determine was defective by visual inspection prior to purchase for

a full refund, provided that the consumer must return the merchandise within the time period

proscribed by the Debtors' return policy that was in effect when the merchandise was purchased,

Debtors:          FRANCESCA'S ACQUISITIONS, LLC, et al.

Case No.:         26-_____ (_____)

Caption of Order: ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
ASSUME AND PERFORM UNDER THE STORE CLOSING
CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
STORE CLOSING
SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.,
which goods shall not be resold by the Debtors; provided however any returns of goods with a
latent defect that were sold prior to the Sale Commencement Date shall not serve to reduce the
Gross Proceeds under the Consulting Agreement.

24.     The Consultant shall not be liable for sales taxes except as expressly provided in
the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the
Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sales to the
applicable Governmental Units as and when due, provided that in the case of a bona fide dispute
the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the
extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance
of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor
or any other party, other than the applicable Governmental Unit for which the sales taxes are
collected.  The Consultant shall collect, remit to the Debtors and account for sales taxes as and to
the extent provided in the Consulting Agreement.  This Final Order does not enjoin, suspend, or
restrain the assessment, levy or collection of any tax under state law, and does not constitute a
declaratory judgment with respect to any party's liability for taxes under state law.

25.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the
Debtors, is authorized to sell, and all sales of Store Closing Assets, whether by the Consultant or
the Debtors, shall be, free and clear of any and all of any liens, claims, encumbrances, and other
interests; *provided*, *however*, that any such liens, claims, encumbrances, and other interests shall

Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:           26-_____ (_____)
Caption of Order:   ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                    ASSUME AND PERFORM UNDER THE STORE CLOSING
                    CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                    STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

attach to the proceeds of the sale of the Store Closing Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closing Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

26.    Neither the Store Closing Procedures, Consulting Agreement, nor this Final Order authorize the Debtors to transfer or sell to Consultant or any other party the personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number ("PII") of any customers or employees unless such sale or transfer is permitted by the Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws").  The foregoing shall not limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Store Closing Sales.  To the extent that the Debtors propose to sell or abandon FF&E which may contain PII or confidential information about the Debtors' employees and/or customers, the Debtors shall remove the PII from such items of FF&E before such sale or abandonment.  At the conclusion of the Store Closing Sales, the Consultant shall provide the Debtors with written verification that the Consultant has not removed,

14

Page (15)
Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (_____)
Caption of Order:     ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                      ASSUME AND PERFORM UNDER THE STORE CLOSING
                      CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                      STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

copied, or sold any customer PII and that any records containing PII were shredded, erased or otherwise modified to render the PII unreadable or undecipherable prior to any sales. Debtors shall prepare and file a declaration of compliance within 30 days from the conclusion of each sale which reflects if any sale or abandonment of FF&E containing PII has taken place and that removal of the PII has occurred.

27.     The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closing Assets among the Closing Stores. The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement, provided that, to the extent prohibited by applicable law, the Consultant and Debtors are not authorized to abandon, and the Debtors are directed to remove and properly dispose of, any hazardous materials defined under applicable law of the jurisdiction in which the materials are located from any leased premises as and to the extent required by applicable law of the jurisdiction in which the lease premises lies.

28.     Notwithstanding this or any other provision of this Final Order, nothing shall prevent or be construed to prevent the entities comprising the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from bidding on any of the Debtors' assets not subject to the Consulting Agreement ("Additional Assets"). The Consultant is hereby authorized to bid on and guarantee or otherwise acquire such Additional Assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court.

37403441.4
4933-8487-4380, v. 2

Debtors:            FRANCESCA'S ACQUISITIONS, LLC, et al.

Case No.:           26-_____ (_____)

Caption of Order:   ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                    ASSUME AND PERFORM UNDER THE STORE CLOSING
                    CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                    STORE CLOSING
                    SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                    CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

## IV.    Dispute Resolution Procedures with Governmental Units.

29.    Nothing in this Final Order, the Consulting Agreement, or the Store Closing

Procedures, releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit

under environmental laws or regulations (or any associated liabilities for penalties, damages, cost

recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or

operator of the property after the date of entry of this Final Order.  Nothing contained in this Final

Order, the Consulting Agreement, or the Store Closing Procedures shall in any way (a) diminish

the obligation of any entity to comply with environmental laws or (b) diminish the obligations of

the Debtors to comply with environmental laws consistent with its rights and obligations as debtor

in possession under the Bankruptcy Code.  The Store Closing Sales shall not be exempt from laws

of general applicability, including, without limitation, public health and safety, criminal, tax, labor,

employment, environmental, antitrust, fair competition, traffic and consumer protection laws,

including local laws, regulations, ordinances, or police powers of general applicability regarding

matters such as regulating deceptive practices and false advertising (collectively, "General Laws").

Nothing in this Final Order, the Consulting Agreement or the Store Closing Procedures, shall alter

or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in

this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section

101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy

forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws

are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code,

Debtors:                  FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:                 26-_____ (_____)
Caption of Order:         ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                          ASSUME AND PERFORM UNDER THE STORE CLOSING
                          CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                          STORE CLOSING
                          SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                          CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

this Final Order, or otherwise, pursuant to paragraph 29 herein.  Notwithstanding any other

provision in this Final Order, no party waives any rights to argue any position with respect to

whether the conduct was in compliance with this Final Order and/or any applicable law, or that

enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final

Order shall be deemed to have made any rulings on any such issues.

30.    To the extent that the sale of Store Closing Assets is subject to Applicable Sale

Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement

directed at regulating "going out of business," "store closing," similar inventory liquidation sales,

or bulk sale laws, including laws restricting safe, professional, and non-deceptive, customary

advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection

with the sale and including ordinances establishing license or permit requirements, waiting

periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the

Store Closing Assets, or any similar laws, the dispute resolution procedures in this section shall

apply:

a. *Provided* that the Store Closing Sales are conducted in accordance with the terms
of this Final Order and the Store Closing Procedures, and in light of the provisions
in the laws of many Governmental Units that exempt court-ordered sales from their
provisions, the Debtors shall be presumed to be in compliance with any Applicable
Sale Laws and, subject to Paragraph 28 hereof, are authorized to conduct the Store
Closing Sales in accordance with the terms of this Final Order and the Store Closing
Procedures without the necessity of further showing compliance with any
Applicable Sale Laws.

b. Within two business days after entry of this Final Order, the Debtor shall serve
copies of this Final Order, the Consulting Agreement and the Store Closing
Procedures via email, facsimile, or regular mail, on the following: (i) the United

Page (18)
Debtors:                    FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:                   26-_____ (_____)
Caption of Order:           ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                            ASSUME AND PERFORM UNDER THE STORE CLOSING
                            CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                            STORE CLOSING
                            SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                            CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

States Trustee; (ii) the state attorney general's office for each state where the Store Closing Sales are being held; (iii) the county consumer protection agency or similar agency for each county where the Store Closing Sales will be held; (iv) the division of consumer protection for each state where the Store Closing Sales will be held; (v) the chief legal counsel for the local jurisdiction; and (vi) the landlords for the stores.

c.   To the extent there is a dispute arising from or relating to the Store Closing Sales, this Final Order, the Consulting Agreement, or the Store Closing Procedures, which dispute relates to any Applicable Sale Laws (a "Reserved Dispute"), this Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten (10) days following entry of this Final Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (which may be by e-mail) to counsel for the Debtors so as to ensure delivery thereof within one business day thereafter. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.   In the event a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtors, a landlord, or other interested party from asserting (i) that the provisions of any Applicable Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Final Order nor the conduct of the Debtors pursuant to this Final Order, violates such Applicable Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Final Order, absent further order of this Court. This Court grants authority for the Debtors and the Consultant to conduct the Store Closing Sales pursuant to the terms of this Final Order, the Consulting Agreement, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Applicable Sale Laws or the lack of any preemption of such Applicable Sale Laws by the Bankruptcy Code. Nothing in this Final Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.   If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is an Applicable Sale Law, and subject to any provisions contained in this Final Order related to the Applicable Sale Laws, then any party to that dispute may utilize the provisions hereunder by

37403441.4
4933-8487-4380, v. 2

Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (_____)
Caption of Order:     ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                      ASSUME AND PERFORM UNDER THE STORE CLOSING
                      CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                      STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is an Applicable Sale Law shall be made *de novo*.

31.     Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 28 and 29 shall apply), no person or entity, including, but not limited to, any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs or the use of sign walkers) of the Store Closing Sales, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

32.     Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these Chapter 11 Cases constitute a default under a lease or provide a basis to terminate the lease; <u>provided</u>, that the Store

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

Closing Sales are conducted in accordance with the terms of this Final Order and the Store Closing Procedures.

33. Subject to Paragraphs 28 and 29 above, each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any governmental unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Store Closing Sales.

34. Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Consulting Agreement, and the Store Closing Procedures, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Consultant shall be presumed to be in compliance with any Applicable Sale Laws and are authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Store Closing Procedures without the necessity of further showing compliance with any such Applicable Sale Laws.

35. To the extent that between the Petition Date and the date of the Final Hearing there is Reserved Dispute, the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute which such Reserved Dispute will be heard at the Final Hearing, absent a party obtaining expedited relief. Nothing in this Final Order shall constitute a ruling with respect to any issues to be raised with respect to a Reserved Dispute. Any Governmental Unit may assert a Reserved Dispute by

37403441.4
4933-8487-4380, v. 2

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

sending a written notice (which may be by e-mail) explaining the nature of the dispute to: (a) the

Debtors, Attn: Curt Kroll, Chief Restructuring Officer (ckroll@scpllc.com); (b) proposed co-

counsel to the Debtors, Mandelbaum Barrett PC Attn Vincent J. Roldan

(vroldan@mblawfirm.com); (d) the Office of the U.S. Trustee for the District of New Jersey, Attn:

Fran B. Steele, Esq. (Fran.B.Steele@usdoj.gov)] (e) counsel to any statutory committee appointed

in these Chapter 11 Cases; (g) counsel to the Consultant, Ellenoff Grossman & Schole, LLP, Attn:

Maura I. Russell (mrussell@egsllp.com); and (g) any affected landlord and their counsel of record

(if known).

## V.    Consumer Provisions.

36.    For the first 14 days following the Sale Commencement Date or as consistent with

the Debtors' prepetition return policy, the Debtors shall accept returns of merchandise sold by the

Debtors in the ordinary course prior to any Store Closing Sales; *provided* that such return is

otherwise in compliance with the Debtors' return policies in effect as of the date such item was

purchased and the customer is not repurchasing the same item so as to take advantage of the sale

price being offered in the Store Closing Sales; *provided, further*, that (a) returns of items sold on

a "final" basis, including items sold in the Initial Closing Stores on a "final" basis pursuant to this

Order, shall not be accepted, and (b) gift cards may not be returned for cash.

37.    Notwithstanding anything herein, all state and federal laws relating to implied

warranties for latent defects shall be complied with and are not superseded by the sale of said

goods or the use of the terms "as is" or "final sales."  The Debtors shall accept return of any goods

21

Page (22)
Debtors:              FRANCESCA'S ACQUISITIONS, LLC, et al.
Case No.:             26-_____ (____)
Caption of Order:     ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO
                      ASSUME AND PERFORM UNDER THE STORE CLOSING
                      CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR
                      STORE CLOSING
                      SALES, (III) APPROVING MODIFICATIONS TO CERTAIN
                      CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund; provided, that the consumer must return the merchandise within 30 days of their purchase, the consumer must provide a receipt for the purchase to the Debtors, and the asserted defect must in fact be a "latent" defect, which goods shall not be resold by the Debtors. Any returns of goods with a latent defect that were sold prior to the Sale Commencement Date shall not serve to reduce the Gross Proceeds under the Consulting Agreement

38.    For the first 30 days following the Sale Commencement Date, such store will continue to accept the Debtors' validly-issued gift certificates and gift cards issued prior to the Store Closing Sales for in-person (and only in person) purchases in the ordinary course of business. After the expiration of the 30 days to utilize gift certificates and gift cards in-store, all such validly-issued gift certificates and gift cards will no longer be accepted by the Debtors and deemed to have no remaining value.  Notwithstanding any policy or state law to the contrary, the gift cards are not redeemable for cash at any time.

39.    The Debtors and the Consultant shall post conspicuous signs in their stores, including at their cash registers, explaining the above "consumer provisions" to customers, including the return policies and gift card policy, which shall remain posted throughout the duration of the Store Closing Sales.  In addition, the Debtors will post notice of the changes to gift cards and customer programs on the Debtors' website.

37403441.4
4933-8487-4380, v. 2

Page (23)

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

## VI.   Other Provisions.

40.   The Debtors are authorized to continue and honor obligations related to the Sale Incentive Program; *provided*, *however*, that such authority shall not extend to any Insider without further order of this Court.

41.   The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

42.   The Debtors shall on a confidential basis provide to the Committee (which can be by email through counsel) copies of periodic reports and information regarding the conduct of the Store Closing Sales that are prepared by the Debtors, their professionals, and/or the Consultant and that are consistent with practices that were in place prepetition.

43.   The Debtors shall have no obligation to indemnify Consultant or provide contribution or reimbursement to Consultant for any claim or expense arising under the Store Closing Procedures or Consulting Agreement that is either: (i) judicially determined (the determination having become final) to have arisen from Consultant's gross negligence, willful misconduct, fraud, breach of fiduciary duty (if any) or bad faith or (ii) settled prior to a judicial determination as to Consultant's gross negligence, willful misconduct, fraud, breach of fiduciary duty (if any), or bad faith, but determined by this Court, after notice and a hearing to be a claim or expense for which the Consultant should not receive indemnity, contribution or reimbursement pursuant to the Store Closing Procedures or Consulting Agreement.

37403441.4
4933-8487-4380, v. 2

Page (24)

| | |
|---|---|
| Debtors: | FRANCESCA'S ACQUISITIONS, LLC, et al. |
| Case No.: | 26-_____ (_____) |
| Caption of Order: | ORDER (I) APPROVING AND AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE STORE CLOSING CONSULTING AGREEMENT, (II) APPROVING PROCEDURES FOR STORE CLOSING SALES, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

44.    This Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Final Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closing Sales, (c) any other disputes related to the Store Closing Sales, and (d) to protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the Consultant, the landlords or the Store Closing Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: _____, 2026            _____
                                       [                                    ]
                                       UNITED STATES BANKRUPTCY JUDGE

37403441.4
4933-8487-4380, v. 2